**MINAKSHI V. HEMLANI**
**LAW OFFICES OF MINAKSHI V. HEMLANI, P.C.**
285 FARENHOLT AVE., SUITE C-312
TAMUNING, GUAM 96913
TELEPHONE: (671) 588-2030
EMAIL:  mvhemlani@mvhlaw.net

**ANDREW C. HELMAN** (*pro hac vice pending*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL:  andrew.helman@dentons.com

*Proposed Counsel for the Debtor*

**IN THE DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**
**BANKRUPTCY DIVISION**

| | |
|---|---|
| In re | Case No. 24-00013 |
| MARIANAS PROPERTIES, LLC,[1] | Chapter 11 |
| Debtor. | **DEBTOR'S REPLY TO UNITED STATES TRUSTEE'S STATEMENT REGARDING DEBTOR'S FIRST DAY MOTIONS** |

Marianas Properties, LLC (the "Debtor") hereby files this reply (the "Reply") to *the United States Trustee's Statement Regarding Debtor's First Day Motions* [Dkt. No. 25] (the "U.S. Trustee Statement") filed by (the "U.S. Trustee").  In support of this Reply and the relief sought in the Debtor's various first day motions described herein (the "First Day Motions"), the Debtor hereby states as follows:

---

[1] The last four digits of the taxpayer identification number of Marianas Properties, LLC, are 9263. The principal office of Marianas Properties, LLC, is located at 627b Pale San Vitores Road, Tumon, Guam 96913.

24189266.v4

## ARGUMENTS IN REPLY

I. **DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING PAYMENT OF CERTAIN PRE-PETITION (I) WAGES, SALARIES, AND OTHER COMPENSATION; (II) REIMBURSABLE EMPLOYEE EXPENSES; (III) EMPLOYEE BENEFITS; AND (IV) RELATED COSTS [Dkt. No. 3] (the "Payroll Motion")[2]**

1. The Payroll Motion seeks various forms of relief in order to ensure there is no harm to Employees by virtue of the Debtor's bankruptcy filing. The U.S. Trustee has raised several distinct, but narrow, objections to the relief sought by the Payroll Motion, which are summarized as follows:

2. *First*, the U.S. Trustee objects to redaction of Employee names on the Payroll Chart listing outstanding pre-petition wages. The Debtor's approach is consistent with prior orders of this Court in other chapter 11 cases.

3. *Second*, the U.S. Trustee objects to "cash out" payments of PTO earned by Employees prior to 180 days before the Petition Date. The Debtor will withdraw this request while continuing to honor accrued PTO in the ordinary course of business without providing any cash out payments to terminated Employees.

4. *Third*, the U.S. Trustee objects to the Debtor paying employer-paid 401(k) contributions because the U.S. Trustee is concerned that such amounts may exceed applicable priority limits in section 507 of the Bankruptcy Code. The Debtor has represented that such amounts will not exceed the priority limits. However, the Debtor will provide the U.S. Trustee a schedule of such payments to be made and proposes that this issue be reserved for a final hearing.

---

[2] Capitalized terms used in this foregoing section shall have the definitions ascribed to such terms in the Payroll Motion.

24189266.v4

5.    *Fourth*, the U.S. Trustee objects to payment of business expense reimbursements that may be owed to Employees from prior to the Petition Date.  The Debtor has not requested this relief, and accordingly, believes that this issue does not require resolution.

**A.    Employees, Wages, and Payroll**

6.    The U.S. Trustee does not object to payment of Wages earned by the Debtor's Employees within 180 days prior to the Petition Date, subject to the priority payment cap of $15,150.00 per Employee found in section 507(a)(4) of the Bankruptcy Code.  Together with the Payroll Motion, the Debtor filed a Payroll Chart that demonstrates that outstanding pre-petition Wage amounts owed to each of its Employees fall well under the $15,150.00 priority cap.  *Payroll Motion*, Exh. A.  Thus, there is no objection to relief authorizing the payment of pre-petition Wages to Employees.

7.    The U.S. Trustee appears to object to the Payroll Chart to the extent it does not disclose the identities of the Debtor's Employees.  Publication of names and wages of the Employees is not necessary to the relief sought by the Payroll Motion and is not relevant to Debtor-creditor relations in this case.  The Debtor chose to file a Payroll Chart that did not disclose Employee names in order protect personal financial information of its Employees and to prevent discord among its Employees during this critical time.[3]  This is consistent with relief ordered by this Court in prior chapter 11 cases.  *See*, *e.g.*, *In re Asia Pacific Financial Management Group, Inc.*, Case No. 23-00005-FTG, Dkt. No. 31 (Bankr. D. Guam 2023) (directing the debtor to filed a redacted payroll register) & Dkt. No. 52 (the debtor's filing of the same); *In re Archbishop of*

---

[3]    It is the Debtor that has sought bankruptcy protection and whose financial information must be disclosed, not its individual Employees.  There is nothing for creditors to gain from publishing the names of Employees and the amount of their wages, and there is no harm from anonymizing this information.  There is potential harm to the Debtor and its Employees from publishing this information.

3

*Agana*, Case No. 19-00010-FTG, Dkt. No. 57, Exh. A (order authorizing payment of pre-petition wages and attaching a redacted list of employees and outstanding wages to be paid).

8.      The Debtor will voluntarily provide a copy of the Payroll Chart with Employee names to the U.S. Trustee on a confidential basis, but the Debtor respectfully requests that the Court otherwise decline to order the Debtor to file an amended Payroll Chart with Employee Names.  There is neither any benefit nor harm to creditors in disclosing this information, whereas there is a risk of harm to the Debtor and its Employees.

### B.      Paid Time Off

9.      The U.S. Trustee made a narrow objection regarding pre-petition PTO.  The U.S. Trustee "does not object to the Debtor's honoring accrued vacation and sick leave in the regular ordinary course of business." *U.S. Trustee Statement*, p. 3.  The U.S. Trustee only objects to "cash-out" payments for PTO accrued more than 180 days before the Petition Date.  *Id.*  The Debtor withdraws its request for authority to make cash payments of pre-petition PTO to Employees upon termination for the reason that all accrued and unused PTO was earned by Employees more than 180 days prior to the Petition Date.  Accordingly, the Debtor believes that the U.S. Trustee's objections regarding PTO are resolved.  There are no further issues in dispute as the balance of issues pertaining to PTO, as the U.S. Trustee does not object to the Debtor honoring accrued PTO in the ordinary course of business without any cash payments for the same.  *See U.S. Trustee Statement*, p. 3.  Honoring PTO is not only customary in chapter 11 cases, but also it is an important factor in workforce morale and retention for any business.

### C.      Employee Benefits

10.      The Payroll Motion seeks authority to maintain various employment benefit programs with any payment on account of pre-petition amounts subject to the limits of section

4

24189266.v4

507(a)(5) of the Bankruptcy Code. The U.S. Trustee does not object to the Debtor's request for authorization to pay costs associated with Employee Benefits or Workers' Compensation Insurance.

11.     However, the U.S. Trustee does object to the Debtor's request for authority to make certain payments in connection with its 401(k) Plan for Employees. At this time, it is unclear whether the U.S. Trustee objects solely to payment of pre-petition employer contributions by the Debtor in connection with the 401(k) Plan (*i.e.*, matching obligations) ("Employer Contributions"), or whether the U.S. Trustee also objects to payment of pre-petition Employee deductions which the Debtor has an obligation to remit to the 401(k) Plan under applicable non-bankruptcy law ("Employee Contributions").[4]

12.     The U.S. Trustee requests that relief respecting 401(k) Plan payments be delayed until a final hearing on the First Day Motions so that the Debtor may provide more information regarding the 401(k) Plan payments it seeks to make. There does not appear to be an objection to payment of Employee Contributions, and such funds are property of Employees that are not property of the Debtor's bankruptcy estate. Employee Contributions should and must be paid when and as required under applicable non-bankruptcy law.

13.     As to Employer Contributions, the Debtor proposes that this issue be reserved for a final hearing on the Payroll Motion. As noted, the Debtor does not seek permission to and will not exceed the priority limits of section 507(a)(5) of the Bankruptcy Code. Between now and a final hearing, the Debtor will provide the U.S. Trustee a schedule of all such Employer

---

[4]     The U.S. Trustee also characterizes the Debtor's request as seeking "unfettered discretion" to pay contributions in excess of the $15,150.00 priority cap under section 507(a)(5) of the Bankruptcy Code. The Debtor objects to this inaccurate characterization. The Debtor represented in the Payroll Motion that 401(k) Plan payments will not cause total payments for pre-petition Employee obligations to exceed the statutory limit for priority claims. *Payroll Motion*, ¶ 20.

24189266.v4

Contributions to be made in order to satisfy the U.S. Trustee's objection on this issue.

### D.    Business Expense Reimbursement

14.    The U.S. Trustee also objects to payment of pre-petition reimbursable employee expenses.  However, the Payroll Motion does not request relief that would permit it to pay any pre-petition reimbursable employee expenses and instead only seeks authority to pay such expenses on a post-petition basis and in the ordinary course of its business.  *See Proposed Order to Payroll Motion*, Dkt. No. 3-2, ¶ 2(F).  The U.S. Trustee has not objected to this.  Given that the only objection by the U.S. Trustee as to reimbursable employee expenses is to payment of pre-petition expenses, there is no dispute that the Court needs to resolve.

## II.    DEBTOR'S MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE USING ITS CASH MANAGEMENT SYSTEM, AND (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND BOOKS AND RECORDS, AND (II) GRANTING RELATED RELIEF [Dkt. No. 4] (the "Cash Management Motion")[5]

15.    The Cash Management Motion seeks various forms of relief in order to assist the Debtor with its transition into chapter 11 as an operational matter. The U.S. Trustee raised three discrete objections summarized as follows:

16.    *First*, the U.S. Trustee objects to the length of time that the Debtor has requested to transition existing bank accounts to debtor-in-possession accounts – proposing 2 to 3 weeks rather than 45 days.  The Debtor has no objection to shortening the amount of time and proposes that an interim order provide for a transition period through and including the date of a final hearing on the Cash Management Motion, subject to the right to seek an enlargement based on facts and circumstances at that time.  The Debtor's bank accounts are located at Bank of Guam ("BOG"), which is an alleged secured party with whom the Debtor has disputes.  BOG and First Hawaiian

---

[5]    Capitalized terms used in this foregoing section shall have the definitions ascribed to such terms in the Cash Management Motion.

24189266.v4

Bank ("FHB") are both authorized depositories under the U.S. Trustee's Guidelines. However, the Debtor does not know whether BOG is amenable to continuing its deposit account relationship with the Debtor or whether FHB's Guam branches are able to open debtor-in-possession accounts. The Debtor will promptly investigate both issues.

17. *Second*, the U.S. Trustee objects to the Debtor maintaining its credit card with FHB and asks that a certificate of deposit ("CD") pledged as collateral to secure the credit card be liquidated with funds placed into a debtor-in-possession account. The Debtor requires additional time to diligence FHB's rights with respect to the CD and the need for continued access to credit card payments for certain vendors. Accordingly, the Debtor requests that this issue be reserved for a final hearing on the Cash Management Motion.

18. *Third*, though not an issue raised by the Cash Management Motion (and so not before the Court), the U.S. Trustee asks that the Court require the Debtor to deposit a $2 million check (the "Check") in a debtor-in-possession account. The Check represents a partial payment on an insurance claim of the Debtor for damage stemming from Typhoon Mawar. The Debtor has not requested relief with respect to the Check and, therefore, there is no issue for decision before the Court. However, the Debtor is unable to deposit or negotiate the Check at this time because the Check is payable to the Debtor and BOG, and those parties may have disputes regarding rights in the Check and value of the Hotel. While all rights are reserved, the Debtor anticipates that BOG is fully secured by the Hotel without regard to the value of the Check or its proceeds.

19. To the extent that the Court directs the Debtor to deposit the Check, the Debtor requests that the Court's order authorize any bank or financial institution to accept the Check with indorsement of the Debtor only and direct that such funds be placed in a segregated deposit account free from any claim or interest of any party, pending further order of the Court.

24189266.v4

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER ON AN INTERIM AND THEN FINAL BASIS: (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND A SUPERPRIORITY CLAIM; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) FOR RELATED RELIEF [Dkt. No. 5] (the "DIP Financing Motion")[6]**

20.     The DIP Financing Motion seeks approval of financing on terms that are, in many respects, more friendly to the Debtor's estate than customarily available from traditional debtor-in-possession lenders.  This includes requesting a junior lien (rather than a priming lien seeking to subordinate BOG), an interest rate equal to current prime rates (rather than a rate in excess of prime rates, to account for the risks of lending to a debtor in bankruptcy), no entry or exit fees, and full subordination of recovery to U.S. Trustee and professional fees.  Moreover, the Debtor, through its professionals, communicated with an established middle market debtor-in-possession lender and was unable to obtain an offer for any financing, let alone financing on similar or better terms.

21.     The U.S. Trustee raised several discrete objections to the DIP Financing Motion. They are each addressed in turn below.

        **A.**     **Findings of Fact and Conclusions of Law in Interim vs. Final Relief**

22.     The U.S. Trustee objects to the inclusion of findings of fact and conclusions of law in the Interim Order, deeming such findings to be premature.  Findings of fact and conclusions of law are important in the context of a borrowing motion.  For example, Bankruptcy Rule 4001(c)(2) provides that relief authorizing borrowing in the first 14 days of a case be limited to what is necessary to avoid immediate and irreparable harm to the estate pending a final hearing, and findings of fact and conclusions of law are appropriate.  Moreover, the First Day Declaration provides factual support sufficient to satisfy this requirement.

---

[6]     Capitalized terms used in this foregoing section shall have the definitions ascribed to such terms in the DIP Borrowing Motion.

24189266.v4

23. However, the Interim Order would also be just that—interim. The Debtor's expectation is that the Court could enter an order with different or contradictory findings of fact and conclusions of law at a final hearing on the DIP Financing Motion. Further, the Debtor would not object to the Interim Order expressly stating that "the findings of fact and conclusions of law are entered on a preliminary basis and that the Court may enter different or contradictory findings of fact and conclusions of law at a final hearing on the DIP Financing Motion."

**B.      Junior Liens and Superpriority Claims**

24. The U.S. Trustee also objects to the provision of junior liens and superpriority administrative claims under the terms of the DIP Facility, as requested and negotiated by the Lender. The U.S. Trustee further questions whether such protections are required in order to induce the Lender to fund the DIP Facility. However, it is typical to grant debtor-in-possession lenders such protections in order to induce them to provide funding to a debtor in bankruptcy, even in the context where, based the lack of alternative lenders, such lender is considered to be an insider of the debtor. *See*, *e.g.*, *In re Vantage Travel Service, Inc.*, Case No. 23-11060-JEB, Dkt. No. 57, ¶¶ 8, 15 (Bankr. D. Mass. July 6, 2023) (granting an insider debtor-in-possession lender the protections of superpriority administrative expense claims (subject to a carve-out for U.S. Trustee and professional expenses) and liens *senior* to any existing pre-petition liens).

25. As noted, the Debtor was unable to identify a lender willing to provide financing on terms equal to or better than presented in the DIP Motion. Moreover, the Debtor requested than any liens be junior to existing liens as of the Petition Date and that the Lender's superpriority adequate claim be subject to a carve-out for U.S. Trustee fees and the Debtor's professionals. This ensures that such expenses will be paid, whereas the U.S. Trustee's proposal heightens risk that U.S. Trustee fees and professional fees are not paid by making them share ratably with the Lender.

9

As to ordinary operating expenses, proceeds of the DIP financing will fund them.

26.     The U.S. Trustee also objects to a perceived failure to identify the assets which are to be encumbered by a junior lien.  It appears this objection is based, at least in part, on the fact that the Debtor has not yet filed schedules and statements.  However, the Debtor has agreed to offer the Lenders liens on substantially all assets of the Debtor, including the specific Uniform Commercial Code categories identified in the DIP Security Agreement.  *See Interim Order*, ¶¶ 6(E), 6(F); *DIP Security Agreement*, § 2.1 (describing collateral).  This includes certain owned lots of real property described in the First Day Declaration, and further identified as follows:

a.  Lot Number 5140-1-2, Tamuning, Guam, Estate Number 70062, Suburban, as said Lot is described in that Parcel Survey Map of Lot No. 5140-1-R1, as shown on Drawing Number MS-340FY82, as L.M. Check Number 191 FY 85, dated 30 May 85 and recorded 31 May 85 under Instrument No. 359298 at Land Management.

b.  Lot Number 5140-2-R3, Tamuning, Guam, Suburban, as said Lot is described in that Real Estate Requirements San Vitores Road Severance Map (From Tumon Bay Road to Chalan San Antonio), as shown on Drawing Number 8518, as LM. Check Number 401 FY 85, dated 17 March 87 and recorded on 27 April 87 under Instrument No. 384173 at Land Management.

To further clarify, with the exception of Avoidance Actions, these are the same collateral upon which the Bank asserts that it holds security interests.  While the Debtor's investigation of the Bank's asserted security interests are ongoing and the Debtor reserves all rights to later contest the Bank's interests to any extent necessary, the Debtor anticipates—based on the information currently available to it—that any liens granted to the Lender pursuant to the DIP Facility will be junior to the interests of the Bank.

27.     Moreover, as noted, Bankruptcy Rule 4001(c)(2) expressly contemplates that that chapter 11 debtors may seek and obtain financing on an emergency basis within the first 14 days of a bankruptcy case, while bankruptcy schedules are not due until the 14th day after a voluntary petition is filed—a deadline that is often extended.  *See Fed. R. Bankr. P.* 1007(a)(1), (a)(5), (c) &

10

4001(c)(2).

28.     Immediate financing from the Lender will permit a protective, value-enhancing process that will, in all likelihood, accrue to the benefit of unsecured creditors (particularly in comparison to the foreclosure process pursued by the Bank that necessitated this chapter 11 filing). Given that the Lender is not required to provide such funding, the cost of capital, and the opportunity cost for the Lender from dedicating funds to the DIP financing, it is a reasonable exercise of the Debtor's business judgment to agree to junior liens and a superpriority claim, especially given that this will fund a process with a better chance of resulting in distributions to junior creditors than BOG's foreclosure auction.

### C.     Avoidance Actions

29.     Following communication with counsel for the Lender, the Debtor withdraws its request that the Lender be granted a lien in Avoidance Actions.  This will preserve the value of Avoidance Actions for distribution to creditors in the order of priority provided for under the Bankruptcy code.

### D.     Trustee Fees and Committee Fees

30.     As to fees for a chapter 7 trustee or a creditor committee, the Debtor has consulted with the Lender and will make certain changes to the Interim Order.

31.     The Debtor proposes to revise the Interim Order (and later Final Order) such that it provides $25,000.00 for professionals retained by any official creditor committee, provided such funds may not be used to pursue claims against or seek to invalidate liens or claims of the Lender. Between this and removal of any lien on Avoidance Actions, there is value available for an official creditor committee.

32.     Further, the Debtor proposes to revise the Interim Order (and later Final Order) to

11

24189266.v4

provide that the Lender will subordinate payment of any superpriority adequate protection claim to $25,000.00 of fees and expenses incurred by a chapter 7 trustee, but not including fees and expenses of a chapter 7 trustee's professionals. This is also subject to the proviso that such funds cannot be used to pursue claims against or seek to invalidate liens or claims of the Lender.

### E. Events of Default

33. Lastly, the U.S. Trustee objects to the inclusion of Events of Default related to conversion of this case to a case under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code.[7] The DIP Facility is a voluntary lending arrangement, and the Debtor does not believe that it can force the Lender into an arrangement to continue to lend to the Debtor in the circumstance of such a significant and material change to the management and affairs of the Debtor. The Lender's borrower is the Debtor—not a case trustee. However, as noted above, the Debtor has agreed to include funds for a chapter 7.

## IV. RETENTION OF THE DEBTOR'S PROFESSIONALS

34. The U.S. Trustee has raised several similar objections to each of the applications to employ the Debtor's professionals (collectively, the "Retention Applications"). The Debtor will address certain common points here before turning to each of the Retention Applications.

35. *First*, the Debtor had not initially anticipated that the Court would set applications for retention of professionals for hearing on a first day basis and is amenable to retentions being approved on an interim basis only, subject to a final hearing. This would provide time for communication among the parties to resolve any disputes, which has proven complicated by the

---

[7] The U.S. Trustee also states that the Events of Default include the appointment of a chapter 11 examiner. The Debtor does not believe that such an appointment would constitute an Event of Default under the DIP Facility Documents.

24189266.v4

fact that the parties involved—the Debtor, its professionals, and the U.S. Trustee—are located in three very different time zones.

36.     *Second*, the Debtor has not proposed that any professional be provided a postpetition retainer.  The Debtor has proposed a process similar to one this Court approved in a prior chapter 11 case (and to which to U.S. Trustee did not object) to provide for a "set aside" fund for reasonably foreseeable administrative expenses incurred by estate professionals.  *See, e.g., In re Asia Pacific Financial Management Group*, Case No. 23-00005-FTG, Dkt. No. 41 (the Subchapter V trustee's application to establish a "set aside" fund for the trustee's anticipated fees and expenses, to be held in escrow by the Subchapter V trustee) & Dkt. No. 84 (order approving the same).  The process proposed is that the Debtor will disburse budgeted funds to its professionals to be held in segregated accounts.  By the terms of the Debtor's proposed orders, the funds would remain property of the Debtor's estate and could only be applied to outstanding fees upon approval of the Court pursuant to an application under section 330 or 331 of the Bankruptcy Code or under interim compensation procedures (if any).  In the event that funds disbursed exceed fees approved, such excess funds would be promptly returned to the Debtor or as the Court otherwise orders.[8]  As noted, this process is similar to one that this Court has approved before. The Debtor proposed it here on the belief it was consistent with local practice.

37.     *Third,* and as an alternative to process proposed by the Debtor, the U.S. Trustee proposes that budgeted professional fees be placed in a separate, authorized debtor-in-possession account.  This alternative is acceptable to the Debtor and the Debtor's professionals in the event that the Court is disinclined to approve of the Debtor's proposal, as it would accomplish the same goals of ensuring for adequate and predictable budgeting for the administrative costs of conducting

---

[8]     Likewise, if fees approved exceed the funds disbursed, then the Debtor will be required to pay such additional amounts to any applicable professional.

24189266.v4

this case.

38. *Fourth*, the U.S. Trustee further requested that such funds be available for administrative expenses other than U.S. Trustee fees and the Debtor's professionals if this case is administratively insolvent. The Debtor does not agree to this as it is contrary to the terms of the proposed DIP financing and places the Debtor's ability to fund this case at risk. The Debtor negotiated terms to ensure that U.S. Trustee and professional fees would be paid during this case. This was a material part of the Debtor's negotiations with the Lender and important to the Debtor's professionals. The Lender has agreed to provide funds for a chapter 7 trustee and to withdraw its request for a lien on Avoidance Actions, which provides a potential source of value to pay other administrative expenses if needed.

39. Against this backdrop, the Debtor provides the following additional arguments in reply to the U.S. Trustee Statement.

## V. APPLICATION TO EMPLOY DENTONS AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION [Dkt. No. 9] (the "Dentons Retention Application")[9]

40. The Debtor provides the following additional reply to certain objections related to the Dentons Retention Application not addressed above:

41. The Debtor and Island Equipment together retained Dentons in the spring of 2021. Dentons provided limited consultative services at that time and then had no communication with the Debtor or Island Equipment until late spring of 2024. At this time, Dentons does not represent Island Equipment, Guam Industrial Services, Inc. ("Guam Shipyard"), or Mathews Pothen (collectively, the "Co-Obligors").

---

[9] Capitalized terms used in this foregoing section shall have the definitions ascribed to such terms in the Dentons Retention Application, or the *Declaration of Andrew C. Helman in Support of the Application to Employ Dentons as Counsel for the Debtor and Debtor in Possession* filed together with the Dentons Retention Application.

14

24189266.v4

42.      Dentons is a well-respected global law firm with restructuring professionals who are familiar with their duties and obligations.  Prior to the commencement of this case, the Debtor understands that Dentons communicated to Island Equipment that it does not represent Island Equipment in connection with the Debtor's chapter 11 case.  The Debtor further understands that Dentons also does not represent Island Equipment with respect to any other matter.  Island Equipment and Guam Shipyard are each represented by separate counsel, as is the Lender.  Dentons has continuing duties to disclose connections to the Debtor, which would include any future representation of Island Equipment or Guam Shipyard.

43.      It is exceedingly common for co-obligors to be represented by the same law firm during simultaneous chapter 11 cases and for closely affiliated companies, including non-debtors, to be represented by the same law firm due to as there is very often an alignment of interests between them and resulting efficiencies by having common counsel.  It is uncommon and a rare exception for co-obligors or affiliated debtors to be represented by separate counsel, as it would lead to the repetition and duplication of work by multiple law firms and result in substantially increased costs to the detriment of creditors.[10]

44.      Accordingly, in the event that BOG initiates enforcement action against Island Equipment or Guam Shipyard, then it is possible that those companies may need restructuring assistance to protect their interests and preserve their businesses, including through preparation and filing of chapter 11 cases.[11]  Island Equipment is the only purveyor of medical grade oxygen

---

[10]      With respect to the retention of the Law Offices of Minakshi V. Hemlani, P.C., further described herein, the U.S. Trustee suggests that professionals may not be qualified to represent debtors under section 327(a) if they simultaneously represent co-obligors.  *See U.S. Trustee Statement*, p. 18 fn. 14.  However, it appears that all of the cases cited by the U.S. Trustee deal with the simultaneous representation of debtors in possession *and their owners or principals*.  *Id*.  This is inapposite to the simultaneous representation of closely affiliated co-debtors in related chapter 11 cases.

[11]      If appropriate at the time, the Debtor would likely seek to have such cases jointly administered with this case.

24189266.v4

in Guam.  Guam Shipyard is an important Guam naval repair facility.  If Island Equipment or Guam Shipyard request assistance from Dentons, then the Debtor understands that Dentons will first evaluate any potential conflict of interest and confirm that such a representation would be consistent with Dentons' duties to the Debtor and its estate.

45.     However, the Dentons Retention Application does not request a ruling with respect to whether Dentons can provide services to any entity other than the Debtor.  Any ruling with respect to Dentons' ability to represent Island Equipment or Guam Shipyard by Dentons would be an advisory opinion that the Debtor has neither requested nor requires at this time.

## VI.     APPLICATION TO EMPLOY THE LAW OFFICES OF MINAKSHI V. HEMLANI, P.C. AS LOCAL COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION [Dkt. No. 11] (the "MVH Retention Application")[12]

46.     The Debtor provides the following additional reply to certain objections related to the MHV Retention Application not addressed above:

47.     The Debtor, Island Equipment, and Guam Shipyard are insureds under one or more of the same insurance policies.  The three companies have disputes with an insurance company related to a claim under the same policy of insurance (as to which the Debtor's portion is the largest).  There is no adversity among these parties with respect to this dispute, and the Debtor asserts that this dispute will be resolved most efficiently with common counsel and, if necessary, in a single action.  Further, Minakshi V. Hemlani, P.C. is likely to act as local counsel for another firm that will be the Debtor's lead insurance coverage counsel.  This may result in commencement of an adversary proceeding seeking the assistance of this Court to determine certain claims and rights of the Debtor.

---

[12]     Capitalized terms used in this foregoing section shall have the definitions ascribed to such terms in the MVH Retention Application, or the *Declaration of Minakshi V. Hemlani in Support of the Application to Employ the Law Offices of Minakshi V. Hemlani, P.C. as Local Counsel for the Debtor and Debtor in Possession* filed together with the MVH Retention Application.

16

48.     The Debtor understands that Minakshi V. Hemlani, P.C. is not general counsel to Island Equipment or Guam Shipyard.  Minakshi V. Hemlani, P.C.'s role in this case will be limited serving as the Debtor's Guam counsel, as well as its Guam counsel for pending insurance disputes.

49.     The Debtor further understands that Minakshi V. Hemlani, P.C. does not represent Mathews Pothen.

## VII.     APPLICATION TO EMPLOY GIBBINS ADVISORS, LLC AS FINANCIAL ADVISOR FOR THE DEBTOR AND DEBTOR IN POSSESSION [Dkt. No. 14] (the "Gibbins Retention Application")[13]

50.     The provides the following additional reply to certain objections related to the Gibbins Retention Application not addressed above:

51.     Gibbins is a financial advisory firm and does not employ lawyers.  Professionals with Gibbins are business professionals who provide support in the context of restructuring.

52.     Gibbins does not represent Island Equipment or Guam Shipyard.  The Debtor understands that Gibbins terminated these representations prior to commencement of this chapter 11 case.  Gibbins has not and does not represent Mathews Pothen.

53.     In the event that BOG initiates enforcement action against Island Equipment or Guam Shipyard, then it is possible that those companies will need assistance from Gibbins to prepare for and file chapter 11 cases.  If Island Equipment or Guam Shipyard request assistance from Gibbins in the future, then the Debtor understands that Gibbins will evaluate any potential conflict of interest and confirm that such a representation would be consistent with Gibbins' duties to the Debtor and its estate.

54.     The Debtor has communicated with Gibbins and understands that Gibbins (as well

---

[13]     Capitalized terms used in this foregoing section shall have the definitions ascribed to such terms in the Gibbins Retention Application, or the *Declaration of Clare Moylan in Support of the Application to Employ Gibbins Advisors, LLC as Financial Advisor for the Debtor and Debtor in Possession* filed together with the Gibbins Retention Application.

24189266.v4

as the Debtor) consent to the inclusion of the U.S. Trustee's proposed indemnification language in any order approving Gibbins' retention requested by the U.S. Trustee. *See U.S. Trustee Statement*, p. 19–20 (the U.S. Trustee's recitation of what is "standard" indemnification language).

55. As noted, Gibbins is a financial advisory firm and is not a law firm. Gibbins does not, and cannot, provide legal services and counsel. The services to be provided by Gibbins are materially different from those provided by Dentons and Minakshi V. Hemlani, P.C. Given the size and complexity of this case, the Debtor requires the services of a financial advisor to assist it with a variety of tasks that are distinct from those to be provided by the Debtor's proposed legal professionals. The Debtor has communicated with its professionals with Dentons and Gibbins and confirms that they will ensure there is no unnecessary duplication of services during this chapter 11 case.

## CONCLUSION

Based on the foregoing, the Debtor requests that the Court grant each of the various first day motions and applications, subject to any modifications proposed herein.

[*The remainder of this page is intentionally left blank*]

18

Dated: September 15, 2024          Respectfully submitted,

**LAW OFFICES OF MINAKSHI V. HEMLANI, P.C.**

*/s/ Minakshi V. Hemlani*
**MINAKSHI V. HEMLANI**


**DENTONS BINGHAM GREENEBAUM LLP**

*/s/ Andrew C. Helman*
**ANDREW C. HELMAN**

*Proposed Counsel for the Debtor*

24189266.v4

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have on September 15, 2024, I caused a copy of the foregoing document to be filed with the electronic case filing system for the United States District Court for the Territory of Guam, Bankruptcy Division, thereby serving all parties in interest receiving service in this case through the Court's electronic filing system.

Dated: September 15, 2024          Respectfully submitted,

                    **DENTONS BINGHAM GREENEBAUM LLP**

                    */s/ Andrew C. Helman*
                    **ANDREW C. HELMAN**

24189266.v4