**MINAKSHI V. HEMLANI**
**LAW OFFICES OF MINAKSHI V. HEMLANI, P.C.**
285 FARENHOLT AVE., SUITE C-312
TAMUNING, GUAM 96913
TELEPHONE: (671) 588-2030
EMAIL: mvhemlani@mvhlaw.net

**ANDREW C. HELMAN** (*pro hac vice pending*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL: andrew.helman@dentons.com

*Counsel for the Debtor*

## IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM
## BANKRUPTCY DIVISION

| | |
|---|---|
| In re | Case No. 24-00013 |
| MARIANAS PROPERTIES, LLC,[1] | Chapter 11 |
| Debtor. | **THE DEBTOR'S OMNIBUS REPLY TO OBJECTIONS TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER ON AN INTERIM AND THEN FINAL BASIS: (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND A SUPERPRIORITY CLAIM; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) FOR RELATED RELIEF** |

Marianas Properties, LLC (the "<u>Debtor</u>") hereby files this omnibus reply (the "<u>Reply</u>") to

(i) the *United States Trustee's Limited Objection Regarding Debtor's Motion for Entry of an Order*

*on an Interim and then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing;*

*(II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling*

---

[1] The last four digits of the taxpayer identification number of Marianas Properties, LLC, are 9263. The principal office of Marianas Properties, LLC, is located at 627b Pale San Vitores Road, Tumon, Guam 96913.

*a Final Hearing; and (V) for Related Relief* [Dkt. No. 52] (the "UST Limited Objection") filed by

the United States Trustee (the "U.S. Trustee"); and (ii) the *Objection to Proposed Final Order*

*Granting Debtor's Motion for Entering of an Order on an Interim and then Final Basis: (I)*

*Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority*

*Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related*

*Relief* [Dkt. No. 54] (the "BOG Objection") filed by the Bank of Guam ("BOG"). In support of

this Reply and the relief sought in the Debtor's *Motion for Entry of an Order on an Interim and*

*then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens*

*and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing;*

*and (V) for Related Relief* [Dkt. No. 5] (the "DIP Financing Motion"), the Debtor hereby states as

follows:

## REPLY

**I.  UNITED STATES TRUSTEE'S LIMITED OBJECTION REGARDING DEBTOR'S MOTION FOR ENTRY OF AN ORDER ON AN INTERIM AND THEN FINAL BASIS: (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND A SUPERPRIORITY CLAIM; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) FOR RELATED RELIEF [DKT. NO. 52] (THE "UST LIMITED OBJECTION")**

1.       The U.S. Trustee does not wholly object to the DIP Financing Motion but asks the

Court to require several modifications to the DIP Financing[2] agreed to between the Debtor and

Lender prior to entry of a final order approving such financing. Nonetheless, the terms of the DIP

Financing agreed to between the Debtor and the Lender are fair and reasonable and further the

Debtor's goal of using chapter 11 to maximize the value of its estate to the benefit of all creditors,

including BOG. Thus, for the reasons stated herein, the Debtor respectfully requests that the Court

---

[2]       Capitalized terms used and not defined herein shall have the meaning ascribed to such terms on the DIP
Financing Motion.

24226996.v3

overrule the UST Limited Objection and grant the DIP Financing Motion on a final basis on the terms agreed to between the Debtor and the Lender – subject to the clarification in paragraph 8 that the Lender subordinates recovery of amounts owed under the DIP Facility to operating expenses contained in the Budget.

2.      *First*, the U.S. Trustee asserts that no final relief should be granted on DIP Financing Motion until the Debtor files its schedules and statements, which are due to be filed on October 10, 2024.[3]  The Debtor disagrees and simply does not understand the connection the U.S. Trustee attempts to draw between the DIP Financing and the Debtor's schedules.  As described in the DIP Financing Motion, the Debtor agreed to provide the Lender liens (junior in priority to any valid and perfected liens that existed as of the Petition Date, including liens asserted by BOG) on *all* of the Debtor's property (but excluding the estate's Avoidance Actions).  This is the same collateral package over which BOG asserts it holds liens.  *See* Dkt. No. 55-1, p. 3.  However, the U.S. Trustee states that the Debtor's schedules and statements will provide "important information on its assets" without ever saying what important purpose would be served by requiring publication of schedules and statements before granting the DIP Financing Motion on a final basis.  This delay is not required by the Bankruptcy Code or Bankruptcy Rules.  *See, e.g.,* 11 U.S.C. § 364; Fed. R. Bankr. P. 4001.  Indeed, it is common for bankruptcy courts around the country to grant final relief on debtor-in-possession financing prior to filing of a debtor's schedules and statements in circumstances similar to those presented here. *See, e.g.*, *In re SC Healthcare Holding, LLC*, Case No. 24-10443-TMH (Bankr. D. Del 2024) [Dkt. Nos. 313, 380]; *In re Wesco Aircraft Holdings, Inc.*, Case No. 23-90611 (Bankr. S.D. Tex. 2023) (schedules filed under seal) [Dkt. Nos. 396, 791];

---

[3]      An extension of the Debtor's deadline to file its schedules and statements was granted without objection from the U.S. Trustee and without the U.S. Trustee arguing that other relief should be delayed or conditioned as a result of such extension.  *See* Dkt. Nos. 41 & 45.

24226996.v3

*In re Pareteum Corporation*, Case No. 22-10615-LGB (Bankr. S.D.N.Y. 2022) [Dkt. Nos. 130, 153]; *In re Garrett Motion, Inc.*, Case No. 22-10615-MEW (Bankr. S.D.N.Y. 2022) [Dkt. Nos. 281, 313]; *In re Extraction Oil & Gas, Inc.*, Case No. 20-11548-CSS (Bankr. D. Del 2020) [Dkt. Nos. 303, 340]; *In re Akorn, Inc.*, Case No. 20-11177-KBO (Bankr. D. Del 2020) [Dkt. Nos. 179, 272].

3.      *Second*, the U.S. Trustee similarly argues that the terms of a final order should not be binding—to any extent—on any potential future committee that the U.S. Trustee *may* appoint in this case.  Section 1102 of the Bankruptcy Code requires the U.S. Trustee to appoint an unsecured creditors committee "as soon as practicable" after the Petition Date.  On the other hand, Bankruptcy Rule 4001(c)(2) permits the Court to enter a final order authorizing the DIP Financing 14 days after the Petition Date and does not contain any requirement that a committee be appointed first.[4]  The U.S. Trustee has not indicated whether there is sufficient interest from creditors such that formation of a committee is likely to occur or the timeframe in the event there is interest.  Given this posture, the Debtor does not believe it is reasonable for U.S. Trustee to ask for open-ended uncertainty regarding all terms of the DIP Financing during this case.  The U.S. Trustee's request would effectively turn any order approving of the DIP Financing into an indefinite interim order and would subject the Debtor, the Lender, and other parties in interest to unacceptable uncertainty regarding the protections afforded if a future committee were to challenge or appeal the Court's order at a later stage of this case.  Moreover, any committee that is formed has the right to investigate any claim that such committee believes the estate may have against the Lender or any other party – and nothing in the DIP Financing Motion or proposed final order alters this.

---

[4]      Similarly, there is no requirement in section 364 of the Bankruptcy Code or Bankruptcy Rule 4001 that schedules and statements be filed prior to entry of a final order.

4.      *Third*, the U.S. Trustee challenges the core protections offered to—and required by—the Lender and baselessly speculates that granting the Lender junior priority liens and a superpriority administrative expense is unnecessary as a result of the Lender's insider status. However, as the Debtor represented in the DIP Financing Motion and the First Day Declaration, the Lender requires these protections in order to provide financing that permits the Debtor to maintain its operations, meet its payroll obligations, and fund administrative expenses that will be incurred during this case. *DIP Financing Motion*, ¶¶ 6–10; *First Day Declaration*, ¶¶ 33–36. Prior to filing this Reply, the Debtor communicated with the Lender through its counsel and has confirmed that, subject to one clarification noted below in paragraph 8, that the Lender's willingness to provide financing in this case is contingent upon these protections. As previously noted, the Debtor also sought alternative sources of financing prior to commencing this case and was unable to identify any other lender that would offer debtor-in-possession financing to the Debtor, nor financing on better terms than offered by the Lender. The U.S. Trustee makes no suggestion that any other lender exists that could offer more favorable terms and merely opines that the Lender should not be afforded protections to lend due to the Lender's pre-existing relationship with the Debtor.

5.      The U.S. Trustee's position ignores two key points. First, the Lender is *not* the Debtor has no obligation provide financing in this case except on consensual terms that are acceptable to it. Second, the DIP Financing terms are, in many respects, more friendly to the Debtor's estate than customarily available from traditional debtor-in-possession lenders. This includes requesting a junior lien (rather than a priming lien seeking to subordinate BOG), an interest rate equal to current prime rates (rather than a rate in excess of prime rates, to account for the risks of lending to a debtor in bankruptcy), no entry or exit fees, and full subordination of

24226996.v3

recovery to U.S. Trustee and professional fees. The Lender has not sought countless aggressive protections that are often required by, and granted to, debtor-in-possession lenders in similar cases, including a "roll up" of prepetition debts, waivers or stipulations regarding the validity of any prepetition claims, waivers of the Debtor's surcharge rights under section 506(c) of the Bankruptcy Code, or other onerous or extraordinary terms.[5] The Debtor sought financing for this case so that it could continue its ongoing operations, pay its employees, and maintain the value of its primary assets while pursuing a value-maximizing transaction for the benefit of BOG, unsecured creditors, and other parties in interest. The protections requested by Lender are fair and reasonable, and the financing provided will serve to preserve and enhance the value of the Debtor's estate (in contrast to a foreclosure sale outside of bankruptcy that would have destroyed value and harmed unsecured creditors).

6.       Notwithstanding the foregoing, the Debtor conferred with counsel for the Lender prior to filing this Reply and confirms that the Lender will subordinate repayment of the DIP Facility to *budgeted* operating expenses contained in the Budget. This is consistent with the parties' intention when negotiating terms of the DIP Facility. To put a finer point on it, the Lender is not, for example, seeking to finance post-petition wages, rent, and other ordinary operating expenses only to demand that such amounts paid during the case be recovered to repay the Lender.

7.       *Finally*, the U.S. Trustee objects to an assortment of provisions in the proposed DIP Financing which the U.S. Trustee asserts will hinder any future committee or future trustee that may be appointed in this case. These provisions include: a limitation on the use of funds budgeted for a future committee to pursue claims against or invalidate liens of the Lender (proposed Final Order, Dkt. No. 51, ¶ 3); a limitation on the amount of funds budgeted for a chapter 7 trustee

---

[5]       Following the U.S. Trustee's earlier objection, and further discussions between the Debtor and the Lender, through counsel, the Lender also agreed not to request liens on Avoidance Actions.

24226996.v3

(proposed Final Order, Dkt. No. 51, ¶ 11); and inclusion of an Event of Default upon conversion of this case to a case under chapter 7 of the Bankruptcy Code, or displacement of the Debtor as a debtor-in-possession in this chapter 11 case (DIP Security Agreement, Dkt No. 5-4, § 8.1).

8.       The U.S. Trustee mischaracterizes each of these provisions and their breadth.  For example, the U.S. Trustee describes the limitation in funds lent by the Lender as an attempt to "stymie a future Committee's ability to investigate the Debtor's financial affairs." *UST Limited Objection*, § 4.  This is not the case.  There is nothing in the terms DIP Financing that would prevent any committee that may be appointed from using budgeted funds to investigate the Debtor's pre-petition and post-petition finances and affairs or investigate claims against the Lender.  Instead, the limitation described by the U.S. Trustee merely prevents the Lender from being forced to finance litigation brought against it (and does not prevent such litigation, so long as it is financed through other means, which could include collections from Avoidance Actions or third-party litigation financing).  Not only is the Lender's request reasonable, but it also is customary.  Similarly, the U.S. Trustee erroneously describes the DIP Financing as an "attempt to limit . . . a chapter 7 trustee's statutory compensation . . . ." *UST Limited Objection*, § 5.  Again, the U.S. Trustee's characterization is misleadingly overbroad.  The proposed Final Order contains no limitation on future chapter 7 trustee's ability to seek or obtain compensation and instead only limits to extent to which a trustee will be authorized to look to the Lender, as opposed to any other source, such as Avoidance Actions, to finance any trustee's compensation.[6]

9.       The U.S. Trustee also wrongly claims that the appointment of an examiner would constitute an Event of Default under the DIP Financing, when the DIP Security Agreement only

---

[6]       Compensation owed to chapter 7 trustees is governed by sections 326 and 330 of the Bankruptcy Code, which provide that a chapter 7 trustee is entitled to payment of reasonable compensation calculated based on a percentage of funds disbursed for the benefit of parties in interest.  11 U.S.C. §§ 326(a), 330(a)(7).

24226996.v3

describes appointment of a chapter 11 trustee to supplant the Debtor as a debtor in possession as a default that relieves the Lender of the obligation to continue making advances of funds.  *See DIP Security Agreement*, Dkt. No. 5-4, §§ 1(d), 8.1.  It is not unreasonable for the Lender to limit its obligation to continue advancing funds if the identity of its borrower fundamentally changes.  The U.S. Trustee relies on a more than 30-year-old opinion to argue to the contrary.  *See In re Ames Dep't Stores, Inc.*, 115 BR 34 (Bankr. S.D.N.Y. 1990).  However, the practices described by the court in *Ames Dep't Stores* are no longer the accepted norm in bankruptcy courts in the Southern District of New York or in other bankruptcy courts around the nation, including within the Ninth Circuit.  *See, e.g.*,  U.S. Bankruptcy Court for the Southern District of New York, General Order No. M-274, *In re Adoption of Guidelines for Financing Requests* ¶ 8 (Sept. 9, 2002) (DIP financing that provides for default upon "conversion to Chapter 7, or on the appointment of a trustee or an examiner with expanded powers, will not be considered extraordinary.") *and* Local Rule 4001-2, U.S. Bankruptcy Court for the Southern District of New York (replacing General Order M-274, and noting that default provisions similar to those proposed here need only be adequately disclosed); *see also* U.S. Bankruptcy Court for the Northern District of California, *Guidelines for Cash Collateral & Financing Motions & Stipulations* (effective Jan. 1, 2006) (stating that the "court will ordinarily approve" of financing motions that provide for "termination of further financing, upon occurrence of a default or conversion to Chapter 7."); *see also* U.S. Bankruptcy Court for the Western District of Washington, *Guidelines for Cash Collateral and Financing Stipulations* (effective July 1, 2008) (stating that "the following provisions will normally be approved" including "termination of further financing, upon occurrence of a default, appointment of a trustee, or conversion to another chapter.").

24226996.v3

10. As a result, the Debtor respectfully requests that the Court grant the DIP Financing Motion on a final basis.

**II. OBJECTION TO PROPOSED FINAL ORDER GRANTING DEBTOR'S MOTION FOR ENTERING OF AN ORDER ON AN INTERIM AND THEN FINAL BASIS: (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND A SUPERPRIORITY CLAIM; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) FOR RELATED RELIEF [DKT. NO. 54] (THE "BOG OBJECTION")**

11. BOG, for its part, merely joins in the arguments put forward by the U.S. Trustee and reiterates the U.S. Trustee's argument that no final order should be entered prior to filing of the Debtor's schedules and statements. For the reasons already states herein, the BOG Objection should be overruled.

12. BOG additionally objects to the identity of the Lender because the Lender is allegedly personally indebted to BOG. This argument is a red herring. This Court lacks jurisdiction over the Lender's assets and any claims BOG may have against the Lender. Further, BOG's characterization of the DIP Financing as an attempt to "strategically deplete" the Lenders' assets is simply false. The purpose of DIP Financing is to protect and enhance the value of the Debtor's estate, which is beneficial to BOG and other creditors, and (potentially) to permit the Debtor to fully satisfy its indebtedness to BOG through a sale or other transaction that fully maximizes the value of the Debtor's assets (as opposed to a value-destructive foreclosure sale). To that end, BOG should be supportive of financing that protects and enhances the value of estate assets.

13. Unless BOG is willing to provide debtor-in-possession financing on the same or better terms as those offered by the Lender, the Debtor respectfully requests that the Court overrule the BOG Objection and grant the DIP Financing Motion on a final basis on the terms requested.

24226996.v3

## CONCLUSION

Based on the foregoing, the Debtor requests that the Court grant the DIP Financing Motion on a final basis, on the terms requested in the Final Order.

Dated: September 30, 2024                 Respectfully submitted,

**LAW OFFICES OF MINAKSHI V. HEMLANI, P.C.**

*/s/ Minakshi V. Hemlani*
**MINAKSHI V. HEMLANI**

**DENTONS BINGHAM GREENEBAUM LLP**

*/s/ Andrew C. Helman*
**ANDREW C. HELMAN**

*Counsel for the Debtor*

10

## CERTIFICATE OF SERVICE

This is to certify that I have on September 30, 2024, I caused a copy of the foregoing document to be filed with the electronic case filing system for the United States District Court for the Territory of Guam, Bankruptcy Division, thereby serving all parties in interest receiving service in this case through the Court's electronic filing system.

Dated: September 30, 2024     Respectfully submitted,


           **DENTONS BINGHAM GREENEBAUM LLP**

            */s/ Andrew C. Helman*
            **ANDREW C. HELMAN**

24226996.v3