**MINAKSHI V. HEMLANI**
**LAW OFFICES OF MINAKSHI V. HEMLANI, P.C.**
285 FARENHOLT AVE., SUITE C-312
TAMUNING, GUAM 96913
TELEPHONE: (671) 588-2030
EMAIL: mvhemlani@mvhlaw.net

**ANDREW C. HELMAN** (admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL: andrew.helman@dentons.com

*Counsel for the Debtor*

# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| In re<br><br>MARIANAS PROPERTIES, LLC, [1]<br><br>    Debtor. | Case No. 24-00013<br><br>Chapter 11<br><br>**MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION FOR APPROVAL OF SETTLEMENT WITH BANK OF GUAM PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** |

Marianas Properties, LLC as debtor and debtor in possession (the "Debtor"), by and through counsel, hereby submits this motion (the "Motion") seeking, among other relief, the entry of an order, substantially in the form filed herewith as **Exhibit A**, approving a compromise between the Debtor and the Bank of Guam ("BOG") under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Debtor respectfully states as follows:

---

[1] The last four digits of the taxpayer identification number of Marianas Properties, LLC, are 9263. The principal office of Marianas Properties, LLC, is located at 627b Pale San Vitores Road, Tumon, Guam 96913.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this chapter 11 case under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.  The Debtor owned and historically operated the Pacific Star Resort & Spa, a hotel and resort located at 627b Pale San Vitores Road, Tumon, Guam 96913 (the "Hotel"). The real estate on which the Hotel was located is comprised of three lots of land. The Debtor owned two lots (the "Owned Lots") and leased one lot (the "Leased Lots").

3.  As the Court is aware, and as further described herein, the Debtor sold substantially all of its assets, including the Hotel, in a sale (the "Sale") that was approved by the Court pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code").

4.  Prior to the Sale, BOG claimed a mortgage interest in the Owned Lots and in the Debtor's interest in the Leased Lots to secure obligations of the Debtor arising out of a loan transaction from 2016 (the "2016 Loan Transaction").

5.  More specifically, in 2016, the Debtor and two companies with a common owner, Mathews Pothen, executed and delivered a promissory note in the original principal amount of $32,000,000.00 (the "Promissory Note").

6.  The principal amount of the Promissory Note currently accrues interest at 10.5%, or $8,348.53 per day based on the currently outstanding principal balance.

7.  Along with the Debtor, Marianas Gas Corporation (doing business as "Island Equipment"), and Guam Industrial Services, Inc. (doing business as "Guam Shipyard") (the Debtor, Island Equipment, and Guam Shipyard shall be referred to as the "Companies") are

borrowers under the Promissory Note. The 2016 Loan Transaction effectuated a refinancing of a prior loan with First Hawaiian Bank on behalf of one or more of the Companies in addition to providing additional liquidity.

8. In connection with the 2016 Loan Transaction, on or about March 31, 2016, the Debtor and Island Equipment executed and delivered that certain Fee Simple and Leasehold Mortgage on Real Property with Power of Sale and Security Agreement dated March 31, 2016, recorded with the Department of Land Management, Government of Guam, under Instrument No. 890664 (the "Mortgage"). Guam Shipyard also pledged additional collateral in which the Debtor has no interest, and the Companies may have executed and delivered other documents related to the 2016 Loan Transaction. Finally, the Debtor's owner (Mathews Pothen) guaranteed obligations of the Companies arising out of the 2016 Loan Transaction to BOG.

9. Following alleged defaults under the Promissory Note and the Mortgage in the spring of 2021, BOG commenced a non-judicial power of sale foreclosure with respect to the Mortgage. The Companies disputed that there were valid defaults under, among other things, the Promissory Note and the Mortgage. Consequently, the Companies commenced an action in the Superior Court of Guam captioned as *Guam Industrial Services, Inc. et al. v. Bank of Guam*, CV-0309-21, in which the Superior Court of Guam issued a temporary restraining order preventing BOG from completing a foreclosure action. This resulted in the Companies and BOG entering into a settlement and amendment to the Promissory Note and other related loan documents from the 2016 Loan Transaction (collectively, the "Loan Documents"). Under this settlement and amendments, the maturity date with respect to the Promissory Note was amended to be June 1, 2024 (the "Maturity Date").

10. In April of 2024, upon a late payment to BOG by the Debtor, BOG declared a default and accelerated the then-outstanding debt.

11. On or about August 13, 2024, BOG issued a notice of sale (the "Foreclosure Notice") with respect to the Debtor's assets securing the Mortgage (but not assets of non-debtors Island Equipment or Guam Shipyard), thereby scheduling an auction of the Owned Lots and any interest of the Debtor in the Leased Lots for September 12, 2024, at 10 a.m. prevailing Chamorro Standard Time.

12. On September 12, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing this chapter 11 case and halting the scheduled foreclosure. The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. On September 27, 2024, BOG filed its *Motion for Relief from the Stay or in the Alternative for SARE Designation* [Dkt. No. 55] (the "Stay Motion), seeking relief from the automatic stay under section 362 of the Bankruptcy Code to complete foreclosure of its mortgage and to exercise of its private power of sale over the Hotel, or a designation that the Debtor was a single asset real estate entity, as defined in the Bankruptcy Code.

14. On October 10, 2024, the Debtor filed its schedules and statement of financial affairs [Dkt. Nos. 73-79] (the "Schedules"). The Schedules list BOG as holding a secured claim in the amount of $28,623,537.63 (the "BOG Claim"). The Debtor scheduled the BOG Claim as disputed, based upon interest accrual amounts that the Debtor had not had the opportunity to validate. The BOG Claim is based upon the 2016 Loan Transaction, the Mortgage, and the Loan Documents as defined above.

15. On October 11, 2024, the Debtor filed its *Objection to the Bank of Guam's Motion for Relief from the Stay or in the Alternative for SARE Designation* [Dkt. No. 87] (the "Objection to Stay Motion"), and on October 25, 2024, a hearing was held on the Stay Motion and the Objection to Stay Motion (the "Stay Motion Hearing").

16. At the Stay Motion Hearing, the Debtor and BOG agreed to continue the Stay Motion Hearing to November 22, 2024. BOG ultimately agreed to continue the Stay Motion Hearing while the Debtor marketed and sold the Hotel and the Owned and Leased Lots. *See* Dkt. Nos. 124, 132, 141.

17. On February 17, 2025, the Debtor filed its *Motion for Authority to Sell Certain Assets of Marianas Properties, LLC, to Assume and Assign Certain Unexpired Leases and Executory Contracts, and to Assign Permits and Licenses in Relation Thereto* [Dkt. No. 145] (the "Sale Motion"), seeking authority to sell substantially all of its assets under section 363 of the Bankruptcy Code. On March 12, 2025, the Court held a hearing on the Sale Motion and entered the order granting the Sale Motion [Dkt. No. 167] (the "Sale Order") the next day.

18. The Sale Order authorized the Debtor to sell substantially all of its assets to Cartium Enterprise Guam, LLC, as assignee of Eastern Contractors Corporation (together, the "Buyer"), for a purchase price of $33,000,000.00 (the "Purchase Price") and under the terms set forth in the Sale Order and the Asset Purchase Agreement by and among the Debtor and the Buyer (the "APA").

19. On April 3, 2025, the Debtor closed on the sale of substantially all of its assets to the Buyer under the terms of the APA and the Sale Order (the "Closing").

20. Subsequent to the Closing, the Debtor and BOG have entered into negotiations regarding resolution of the Stay Motion and payoff amount of the BOG Claim. The Debtor has

agreed that BOG shall be paid $32,503,544.487 in exchange for the cessation of interest accrual on the BOG Claim and in full satisfaction of the BOG Claim, thereby simplifying and streamlining further proceedings in this case.

## RELIEF REQUESTED

21. The Debtor seeks entry of an order under Bankruptcy Rule 9019 authorizing the Debtor to compromise the amount of the BOG Claim as set forth in the proposed order attached hereto as **Exhibit A**.

## ARGUMENT

22. Bankruptcy Rule 9019 provides that "[o]n motion by the [Debtor in Possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019. In reviewing any proposed settlement under Bankruptcy Rule 9019, courts will approve the settlement if it is "fair and equitable" and in the best interests of the debtor's bankruptcy estate. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Further, compromise is favored over continued litigation. *See Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986) (citing *Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976)).

23. Within the Ninth Circuit, courts evaluate a settlement proposed under Bankruptcy Rule 9019 by considering the following factors:

> (1) The probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (4) the paramount interest of the creditors and a proper deference to their reasonable views.

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988); *In re A & C Properties*, 784 F.2d at 1381. Courts consider these factors to determine "the fairness,

reasonableness and adequacy of a proposed settlement agreement." *In re A & C Prop.*, 784 F.2d at 1381.

24. When considering these factors, the court need "only canvass the issues." *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (citing *In re Blair*, 538 F.2d at 851-52); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir. 1983). "A mini trial on the merits is not required." *In re Schmitt*, 215 B.R. at 423.

25. The court must be informed of all the relevant facts and information in order to make an independent judgment as to whether the settlement is fair and reasonable under the circumstances. *In re Vazquez,* 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005). But a compromise or settlement should be approved unless it "fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d at 608; *see also In re A & C Properties*, 784 F.2d at 1381 (holding that a settlement should be approved if it is reasonable given the particular circumstances of the case).

26. The compromise approval process does not contemplate that a bankruptcy court will substitute its business judgment for that of a Debtor. Rather, a court generally should give deference to a debtor's exercise of business judgment. *Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Enter. Grp.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003).

27. Here, the settlement terms between BOG and the Debtor are fair, equitable, and in the best interest of creditors and the estate. In exchange for, as of April 24, 2025, BOG halting interest accruing at $8,348.53 per day under the Promissory Note, its agreement not to pursue foreclosure or its other remedies against any parties, and the withdrawal of its pending Stay Motion, the Debtor has agreed to pay BOG, in full and final satisfaction of all obligations under BOG's Promissory Note and Mortgage and any other Loan Documents, $32,503,544.87 (the

7
24758715.v4
Case 24-00013    Document 183    Filed 05/20/25    Page 7 of 9

"Payoff Amount"). This Payoff Amount consists of a principal amount of $28,623,537.63, interest charges in the amount of $3,043,426.77, and loan fees totaling $844,929.00, including attorneys' fees and insurance premiums incurred by BOG. BOG has also agreed not to seek the total balance of its attorney's fees related to the enforcement of its Promissory Note and Mortgage as part of this compromise and settlement.

28. The Debtor does not dispute that BOG maintained a first priority secured interest in the Hotel prior to the Sale. Further, following the Sale, the Debtor has reviewed and analyzed the principal balance and interest accruals claimed by BOG, as well as documentation in support of other loan-related fees and expenses, and does not materially disagree with the Payoff Amount asserted by BOG.

29. Pursuant to section 552 of the Bankruptcy Code, BOG's security interest extends to the proceeds of the Sale. Based on BOG's secured status, BOG is entitled to be paid prior to any junior claims or interests, including administrative expenses, priority and nonpriority unsecured claims, and equity interests. Therefore, no party in interest will be harmed or have their eventual distributions lowered as a result of the payment of the Payoff Amount to BOG.

30. On the other hand, section 506(b) of the Bankruptcy Code provides that if a secured creditor's collateral value exceeds the amount of its secured claim, and thus is over-secured, then a secured creditor is entitled to claim post-petition interest, fees, and costs, up to the value of their collateral. Based on the Purchase Price of the Hotel and the Payoff Amount, it appears that BOG is over-secured and entitled to claim post-petition interest, fees, and costs as permitted under the Loan Documents. Given that interest on the outstanding principal balance of $28,623,537.63 is accruing at $8,348.53 per day, or more than a quarter million dollars per month, there remains value for other creditors and the estate to BOG's agreement to halt interest accruals as of April 24,

2025 in exchange for payment of its claim prior to confirmation of a chapter 11 plan.

31. Therefore, the Debtor submits that the settlement proposed by this Motion presents no downside risk to creditors or the estate, and prevents significant benefits to creditors and the estate by reducing the amount of interest that would accrue between April 24, 2025, and the eventual confirmation of a chapter 11 plan.

Based on the foregoing, the Debtor respectfully requests that the Court enter an order (i) granting the Motion, (ii) approving the settlement described herein with BOG, and (iii) granting such further relief as the Court deems just and proper.

Dated: May 20, 2025　　　　　　　　　　Respectfully submitted,

**LAW OFFICES OF MINAKSHI V. HEMLANI, P.C.**

　*/s/ Minakshi V. Hemlani*
　**MINAKSHI V. HEMLANI**

**DENTONS BINGHAM GREENEBAUM LLP**

　*/s/ Andrew C. Helman*
　**ANDREW C. HELMAN**

*Counsel for the Debtor*