# THE DISTRICT COURT OF GUAM

In re

MARIANAS PROPERTIES, LLC, [1]

    Debtor.

Case No. 24-00013

Chapter 11

## DISCLOSURE STATEMENT FOR
## THE PLAN OF LIQUIDATION OF MARIANAS
## <u>PROPERTIES, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

**By and through**:

**MINAKSHI V. HEMLANI**
**LAW OFFICES OF MINAKSHI V.**
**HEMLANI, P.C.**
285 FARENHOLT AVE., SUITE C-312
TAMUNING, GUAM 96913
TELEPHONE: (671) 588-2030
EMAIL: mvhemlani@mvhlaw.net

**ANDREW C. HELMAN**
(admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL: andrew.helman@dentons.com

*Counsel to Marianas Properties, LLC*

---

[1]     The last four digits of the taxpayer identification number of Marianas Properties, LLC, are 9263. The principal office of Marianas Properties, LLC, is located at 627b Pale San Vitores Road, Tumon, Guam 96913.

24826666.v4

# TABLE OF CONTENTS

ARTICLE I: BACKGROUND ON THE DEBTOR ................................................................. 3

    1.1    General Overview of the Debtor ................................................................. 3
    1.2    Summary of the Debtor's Prepetition Debt Structure ............................................. 3

ARTICLE II: KEY EVENTS IN THE CHAPTER 11 CASE ................................................ 4

    2.1    Employment of Professionals ................................................................. 4
    2.2    Post-Petition Borrowing ................................................................. 5
    2.3    Other First-Day Relief ................................................................. 5
    2.4    Establishment of Bar Dates (Other Than Bar Dates Established in the Plan) ................................................................. 6
    2.5    BOG's Motion for Relief from the Automatic Stay ................................................ 6
    2.6    The Sale of Substantially All of the Debtor's Assets ............................................ 5
    2.7    BOG Settlement and 9019 Motion ................................................................. 6
    2.8    Potential Avoidance Causes of Action ........................................................... 6

ARTICLE III: SUMMARY OF THE PLAN AND CONFIRMATION REQUIREMENTS ....... 6

    3.1    Confirmation Hearing; Voting Requirements; Objection Deadline ..................... 6
    3.2    Parties in Interest Entitled to Vote ................................................................. 8
    3.3    Requirements for Confirmation; Voting ........................................................ 8
    3.4    Impairment ................................................................. 8
    3.5    Confirmation without Necessary Acceptances; Cramdown ............................... 9
    3.6    Feasibility ................................................................. 9
    3.7    Best Interests Test and Liquidation Analysis .................................................. 9
    3.8    Other Requirements of section 1129 of the Bankruptcy Code ........................... 10
    3.9    Classification and Treatment of Claims and Interests Under the Plan ................ 10
    3.10   Plan Bar Dates ................................................................. 14
    3.11   Treatment of Executory Contracts and Unexpired Leases ............................... 14
    3.12   No Admissions ................................................................. 15
    3.13   EXCULPATION, RELEASE, INJUNCTION ........................................ 15

ARTICLE IV: CERTAIN FEDERAL TAX CONSEQUENCES AND OTHER DISCLOSURES ................................................................. 17

ARTICLE V: RISK FACTORS IN CONNECTION WITH THE PLAN ............................... 18

ARTICLE VI: RECOMMENDATION AND CONCLUSION ............................................. 19

ARTICLE IV: CERTAIN FEDERAL TAX CONSEQUENCES AND OTHER DISCLOSURES ................................................................. 17

i

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | Plan of Liquidation |
| 2 | Feasibility/Liquidation Analysis |

24826666.v4

## DISCLAIMER

THIS DISCLOSURE STATEMENT, THE PLAN,[2] AND THE ACCOMPANYING BALLOTS AND RELATED MATERIALS DELIVERED HEREWITH, ARE BEING PROVIDED BY MARIANAS PROPERTIES, LLC TO KNOWN HOLDERS OF CLAIMS AND INTERESTS OF THE DEBTOR PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN IN THE CHAPTER 11 CASE.

EACH HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING.  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE.  NO HOLDER OF A CLAIM OR INTEREST SHOULD RELY ON ANY INFORMATION RELATING TO THE DEBTOR, ITS PROPERTY, OR THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS.  IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THEN THE PLAN SHALL CONTROL.

HOLDERS OF CLAIMS, INTERESTS, AND OTHER PARTIES SHOULD BE AWARE THAT THE PLAN CONTAINS EXCULPATION, RELEASE, INJUNCTION, AND OTHER PROVISIONS DISALLOWING OR MODIFYING CLAIMS AND INTERESTS THAT MAY MATERIALLY AFFECT THEIR RIGHTS.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN ACCORDANCE WITH APPLICABLE LAW, THE DEBTOR IS UNDER NO DUTY TO UPDATE OR SUPPLEMENT THIS DISCLOSURE STATEMENT.  THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE MERITS OF THE PLAN BY THE BANKRUPTCY COURT.  THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ANY ENTITIES DESIRING ANY SUCH ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT IS UNAUDITED, EXCEPT AS SPECIFICALLY INDICATED OTHERWISE.  ANY FINANCIAL ANALYSIS OR PROJECTIONS ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY UNCERTAIN AND BEYOND THE

---

[2]     Capitalized terms, not otherwise specifically defined in this Disclosure Statement, shall have the meanings attributed to such terms in the substantially contemporaneously filed *Plan of Liquidation of Marianas Properties, LLC Under Chapter 11 of the Bankruptcy Code* (the "Plan").

1

**CONTROL OF THE DEBTOR'S MANAGEMENT. THE DEBTOR CAUTIONS THAT NO REPRESENTATIONS ARE MADE AS TO THE ACCURACY OF THESE PROJECTIONS. THEREFORE, DO NOT RELY ON THE FINANCIAL PROJECTIONS AS A GUARANTEE OR OTHER ASSURANCE THAT THE ACTUAL RESULTS WILL OCCUR.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE 3016 AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH EACH WAS PREPARED. ONE SHOULD NOT CONSTRUE THIS DISCLOSURE STATEMENT AS ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OF THE DEBTOR, AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATIONS OR OTHER ACTIONS, THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER BY THE DEBTOR OR ANY OTHER PARTY, BUT RATHER AS A STATEMENT MADE IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS IN ACCORDANCE WITH FED. R. EVID. 408. AS SUCH, THIS DISCLOSURE STATEMENT IS NOT ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY IN INTEREST, NOR SHOULD ONE CONSTRUE IT AS CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE PLAN TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR OR ANY OTHER PARTY IN INTEREST.**

24826666.v4

# INTRODUCTION

Marianas Properties, LLC (the "<u>Debtor</u>") submits this Disclosure Statement under section 1125 of the Bankruptcy Code for the solicitation of votes to accept or reject the Plan, a copy of which is attached hereto as **<u>Exhibit 1</u>**. The Bankruptcy Court will hold hearings on: (i) the adequacy of this Disclosure Statement; and (ii) confirmation of the Plan. The Debtor will request that the Bankruptcy Court approve this Disclosure Statement as containing "adequate information," in accordance with section 1125(b) of the Bankruptcy Code, to enable a hypothetical, reasonable investor typical of claimholders entitled to vote on the Plan to make an informed judgment about whether to accept or reject the Plan.

# ARTICLE I:
## BACKGROUND ON THE DEBTOR

### 1.1    General Overview of the Debtor

The Debtor and debtor in possession in this chapter 11 case is Marianas Properties, LLC. The Debtor is a Guam limited liability company formed in 2009. Mathews Pothen is the sole member of the Debtor.

The Debtor owned and historically operated the Pacific Star Resort & Spa, a hotel and resort located at 627b Pale San Vitores Road, Tumon, Guam 96913 (the "<u>Hotel</u>"). The Hotel was independent and was not affiliated with any hotel franchise. The Hotel had 19 floors with 436 guest rooms and historically offered amenities typical and customary for a resort and spa. These included multiple bars, restaurants and dining, fitness facilities, laundry services, meeting and conference facilities, banquet and wedding services, spa facilities and beauty services, and a swimming pool. The real estate on which the Hotel was located is comprised of three lots of land. The Debtor owned two lots (the "<u>Owned Lots</u>") and leased one lot (the "<u>Leased Lot</u>").

Due to the COVID-19 Pandemic, the Debtor paused operations at the Hotel and no longer accepted hotel guests. Subsequently, the Debtor operated the Hotel as a COVID-related quarantine facility in cooperation with the government of Guam for a short period of time and then suspended guest services operations thereafter.

The Debtor planned to reopen the Hotel in 2023. Unfortunately, in May of 2023, Typhoon Mawar caused substantial damage to the Hotel, which prevented its reopening at that time. The Debtor is insured under a policy of insurance with DB Insurance Co., Ltd. ("<u>DB Insurance</u>") to provide coverage for such losses at the Hotel. The Debtor timely submitted a claim to DB Insurance but did not receive full or timely payment, which prevented the Debtor from making needed repairs that would have permitted the Debtor to offer hotel services again.

### 1.2    Summary of the Debtor's Prepetition Debt

The Bank of Guam ("<u>BOG</u>") claimed a mortgage interest in the Owned Lots and in the Debtor's interest in the Leased Lot (the "<u>Mortgage</u>") securing obligations of the Debtor arising out of a 2016 loan transaction (the "<u>2016 Loan Transaction</u>").

More specifically, in 2016, the Debtor and two Affiliate companies owned by Mathews Pothen, executed and delivered and undated promissory note in the original principal amount of $32 million (the "Promissory Note"). The two Affiliates are Marianas Gas Corporation (doing business as "Island Equipment") and Guam Industrial Services, Inc. (doing business as "Guam Shipyard") (collectively, the Debtor, Island Equipment, and Guam Shipyard shall be referred to as the "Companies"). The 2016 Loan Transaction effectuated a refinancing of a prior loan with First Hawaiian Bank on behalf of one or more of the Companies, in addition to providing additional liquidity.

Following alleged defaults under the Promissory Note and the Mortgage in the spring of 2021, BOG commenced a non-judicial power of sale foreclosure with respect to the Mortgage. The Companies disputed that there were valid defaults under, among other things, the Promissory Note and the Mortgage. Consequently, the Companies commenced an action in the Superior Court of Guam captioned as *Guam Industrial Services, Inc. et al. v. Bank of Guam*, CV0309-21, in which the Superior Court of Guam issued a temporary restraining order preventing BOG from completing its foreclosure action. Ultimately, the Companies and BOG entered into a settlement and amendment to the Promissory Note and other related loan documents from the 2016 Loan Transaction (collectively, the "Loan Documents"). Under this settlement and amendments, the maturity date with respect to the Promissory Note was amended to be June 1, 2024 (the "Maturity Date").

On or about August 13, 2024, BOG issued a certain notice of sale (the "Foreclosure Notice") with respect to the Hotel assets securing the Mortgage (but not assets of non-debtor Affiliates Island Equipment or Guam Shipyard), thereby scheduling an auction of the Owned Lots and any interest of the Debtor in the Leased Lot for September 12, 2024, at 10 a.m. prevailing Chamorro Standard Time. The Bank asserted that the outstanding balance of principal and interest owed was $29.5 million as of August 13, 2024.

## ARTICLE II:
## KEY EVENTS IN THE CHAPTER 11 CASE

On September 12, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Bankruptcy Code in the Bankruptcy Division of the U.S. District of Guam (the "Bankruptcy Court"). The following is a brief summary of several key events during the chapter 11 case.

### 2.1   Employment of Professionals

During the chapter 11 case, the Bankruptcy Court approved the employment of the following Professionals in order assist the Debtor with conducting the chapter 11 case:

- Dentons, as general bankruptcy counsel to the Debtor;

- The Law Offices of Minakshi V. Hemlani P.C., as local counsel to the Debtor;

- Gibbins Advisors, LLC, as financial advisor to the Debtor;

### 2.2    Post-Petition Borrowing

On the Petition Date, the Debtor sought, among other things, Bankruptcy Court authority to borrow debtor-in-possession financing ("DIP Financing") from Mathews Pothen. The Debtor relied on DIP Financing to fund its operations during the chapter 11 case. The Debtor received Bankruptcy Court authorization to obtain DIP Financing from Mathews Pothen. *See Final Order Granting Debtor's Motion for Entry of an Order on an Interim and then Final Basis: (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Liens and a Superpriority Claim; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) for Related Relief*, dated November 18, 2024 [Docket No. 121] (the "Post-Petition Financing").

### 2.3    Other First-Day Relief

Also on the Petition Date, the Debtor sought authority to continue using its existing bank accounts and cash management system by filing the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Continue Using its Cash Management System, and (B) Maintain Existing Bank Accounts and Business forms and Books and Records, and (II) Granting Related Relief* [Docket No. 4] (the "Cash Management Motion"), and authority to pay its employees' outstanding wages by filing the *Debtor's Motion for Entry of an Order Authorizing Payment of Certain Pre-Petition (I) Wages, Salaries, and Other Compensation; (II) Reimbursable Employee Expenses; (III) Employee Benefits; and (IV) Related Costs* [Docket No. 3] (the "Payroll Motion").

On October 29, 2024, the Cash Management Motion and the Payroll Motion were both granted on a final basis after a hearing on the matters. See Docket Nos. 109 and 112.

### 2.4    Establishment of Bar Dates (Other Than Bar Dates Established in the Plan)

The Court entered the *Notice of Chapter 11 Bankruptcy Case* on September 16, 2024, [Docket No. 37] which established the following deadlines for filing proofs of claim: (i) January 14, 2025 – General Bar Date; and (ii) March 11, 2025 – Government Bar Date.

### 2.5    BOG's Motion for Relief from the Automatic Stay

On September 27, 2024, BOG filed its *Motion for Relief from Stay or in the Alternative for SARE Debtor Designation* [Docket No. 55] (the "Stay Relief Motion"), seeking relief from the automatic stay under section 362 of the Bankruptcy Code to foreclose on the Hotel, or alternatively for a determination that the Debtor was a single asset real estate ("SARE") entity, as that term is defined in the Bankruptcy Code. After contested hearings, intense negotiations with BOG, and the Sale of the Hotel, the Debtor and BOG agreed to resolve the Stay Relief Motion with a payment of $32,503,544.87 to BOG in exchange for, among other relief, BOG's agreement to entry of an order by the Bankruptcy Court's denying the Stay Relief Motion.

### 2.6    The Sale of Substantially All of the Debtor's Assets

After exploring various options, the Debtor determined to pursue an asset sale (the "Sale") in the Chapter 11 Case. Details regarding the Debtor's pre-petition marketing and sale efforts are set forth in the *Motion for Authority to Sell Certain Assets of Marianas Properties, LLC, to Assume*

5

*and Assign Certain Unexpired Leases and Executory Contracts, and to Assign Permits and Licenses in Relation Thereto* [Docket No. 145] (the "Sale Motion"). Additional information regarding the Debtor's post-petition marketing efforts, discussions with interested parties, and the Sale are set forth in *Declaration of Ajay Pothen in Support of Motion for Authority to Sell Certain Assets of Marianas Properties, LLC, to Assume and Assign Certain Unexpired Leases and Executory Contracts, and to Assign Permits and Licenses in Relation Thereto* [Docket No. 146] (the "Sale Declaration"). The Bankruptcy Court authorized the Sale to Cartium Enterprise Guam, LLC, as assignee of Eastern Contractors Corporation, through its entry of the *Order Granting Motion for Authority to Sell Certain Assets of Marianas Properties, LLC, to Assume and Assign Certain Unexpired Leases and Executory Contracts, and to Assign Permits and Licenses in Relation Thereto* [Docket No. 167] (the "Sale Order"). The Sale Closing occurred on April 3, 2025 [*see* Docket No. 172].

### 2.7 BOG Settlement and 9019 Motion

After the Sale, the Debtor negotiated a settlement with BOG resolving the Stay Relief Motion. In exchange for prompt payment from the proceeds of the Sale, BOG agreed to stop interest accruals under the Promissory Note and the Loan Documents, and provided the Debtor with a payoff amount of $32,503,544.87. The Debtor filed its *Motion of the Debtor and Debtor In Possession for Approval of Settlement with Bank of Guam Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 183] (the "9019 Motion") seeking the entry of an order approving the compromise and settlement discussed above. On June 4, 2025, the Bankruptcy Court entered an order granting the 9019 Motion [Docket No. 188], and the Debtor subsequently paid BOG $32,503,544.87, in full satisfaction of BOG's claim.

### 2.8 Potential Causes of Action

The Debtor has existing, unresolved causes of action against DB Insurance, the Hotel's former insurer, resulting from insurance claims related to damage to the Hotel during Typhoon Mawar. All causes of action related to the insurance claims vest in the Reorganized Debtor as of the Effective Date.

## ARTICLE III:
## SUMMARY OF THE PLAN AND CONFIRMATION REQUIREMENTS

**THIS SECTION PROVIDES A SUMMARY OF THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN. ALL PARTIES ARE ADVISED TO READ THE PLAN IN ITS ENTIRETY**.

### 3.1 Confirmation Hearing; Voting Requirements; Objection Deadline

The Confirmation Hearing shall occur on **[_____] [__], 2025 at [__]:00 a.m.** (prevailing Eastern Time) at United States District Court for the District of Guam – Bankruptcy Division, 520 W. Soledad Ave Floor 4, Hagåtña, GU 96910 (or via telephone or Zoom upon instructions to be timely provided). The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Court.

Any objection to confirmation of the Plan must be: (i) made in writing; and (ii) Filed with the Court and served on counsel for the Debtor so as to be actually received on or before **[_____] [__], 2025**. The addresses for the Debtor and the Court are as follows:

<u>To the Debtor</u>:

By Mail:     Dentons Bingham Greenebaum LLP
Andrew C. Helman
One City Center, Suite 11100
Portland, ME 04101

By Email:    andrew.helman@dentons.com
kyle.d.smith@dentons.com
david.boydstun@dentons.com

<u>To the Court</u>:

By Mail:     U.S. District Court of Guam – Bankruptcy Division
520 W. Soledad Ave, Floor 4
Hagåtña, GU 96910

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

For a vote to be counted, the Ballot must be properly completed, signed, and returned so that it is actually received by the Debtor no later than **[_____] [__], 2025 (the "<u>Voting Deadline</u>")**, unless such time is extended in writing by the Debtor.

Please return a hard copy of your Ballot. You may return it in the enclosed pre-addressed, postage prepaid envelope or:

| **By first class mail to**: | **Via overnight courier or hand delivery to**: |
|:---:|:---:|
| Dentons Bingham Greenebaum LLP | Dentons Bingham Greenebaum LLP |
| Andrew C. Helman | Andrew C. Helman |
| One City Center, Suite 11100 | One City Center, Suite 11100 |
| Portland, ME 04101 | Portland, ME 04101 |

**ALL BALLOTS MUST BE SIGNED BY AN AUTHORIZED PARTY AND FULLY COMPLETED. INCOMPLETE BALLOTS OR BALLOTS NOT ACTUALLY RECEIVED BY THE VOTING DEADLINE SHALL NOT BE COUNTED, AND BALLOTS THAT DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL NOT BE COUNTED. BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL <u>NOT</u> BE COUNTED. EVEN IF YOU DO NOT**

**VOTE TO ACCEPT THE PLAN, YOU MAY STILL BE BOUND BY THE PLAN IF IT IS ACCEPTED BY THE REQUISITE HOLDERS OF CLAIMS AND CONFIRMED BY THE BANKRUPTCY COURT.**

IF YOU ARE ENTITLED TO VOTE ON THE PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S COUNSEL BY EMAIL AT ANDREW.HELMAN@DENTONS.COM AND REFERENCE "MARIANAS PROPERTIES" IN THE SUBJECT LINE. THE DEBTOR'S COUNSEL IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

### 3.2 Parties in Interest Entitled to Vote; Voting on Consolidated Basis

Pursuant to the Bankruptcy Code, only Holders of Allowed Claims in Classes of Claims that are Impaired are entitled to vote to accept or reject the Plan. Any Claim to which an Objection has been Filed is not entitled to vote unless the Bankruptcy Court, upon timely application of the Holder of the Claim, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. **Any such application to temporarily allow a Claim for voting purposes must be heard and determined by the Bankruptcy Court on or before the Voting Deadline**. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the vote was not solicited or made in good faith or in accordance with the provisions of the Bankruptcy Code.

### 3.3 Requirements for Confirmation; Voting

The Bankruptcy Court will confirm a plan only if it meets all of the applicable requirements under section 1129 of the Bankruptcy Code, which includes that a plan: (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class or Classes, must not "discriminate unfairly" against, and be "fair and equitable" to, such Class or Classes; and (b) must be feasible. The Bankruptcy Court must also find, among other things, that: (i) a plan has classified Claims and Interests in a permissible manner; (ii) a plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) a plan was proposed in good faith.

For the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one voting class, excluding the votes of Insiders, must vote to accept a Plan.

8

### 3.4 Impairment

Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan. Under section 1124 of the Bankruptcy Code, a Class of Claims is "impaired" under a plan unless, among other things, with respect to each Claim of such Class, the plan leaves unaltered the legal, equitable, and contractual rights of the Holder of the Claim or Interests.

### 3.5 Confirmation without Necessary Acceptances; Cramdown

A plan may be confirmed, even if it is not accepted by all Impaired Classes, if a plan has been accepted by at least one impaired Class of Claims, and the plan meets the "cramdown" requirements in section 1129(b) of the Bankruptcy Code. Section 1129(b) requires that a court find that a plan "does not discriminate unfairly," and is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. A plan does not "discriminate unfairly" if: (a) the legal rights of a non-accepting Class are treated in a manner that is consistent with the treatment of other Classes whose legal rights are similar to those of the non-accepting Class; and (b) no Class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtor believes that the Plan is fair and equitable, and does not discriminate unfairly, against any Holder of a Claim or Interest.

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTOR MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE.**

### 3.6 Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the plan). Considerable assets have been liquidated and converted to Cash in the Chapter 11 Case, and the Plan provides for the liquidation of any remaining assets and distribution of the Remaining Estate Funds and Remaining Cash to Holders of Allowed Claims in accordance with the Plan.

The Feasibility/Liquidation Analysis prepared by the Debtor is attached hereto as **Exhibit 2**. For purposes of determining feasibility, the Debtor has analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan. Based on the analysis, which includes, without limitation, consideration of the value of the Remaining Estate Funds, the Remaining Cash, Causes of Action, Allowed Claims, and anticipated Estate Expenses, the Reorganized Debtor believes that the Remaining Estate Funds, Remaining Cash, and Causes of Action are sufficient to accomplish the required tasks under the Plan. Specifically, the Reorganized Debtor projects that, from the Remaining Estate Funds and the Remaining Cash, it will have sufficient Cash to pay Unclassified Claims (including Administrative Expenses, Professional Fee Claims, the DIP Financing Claim, U.S. Trustee Fees, and Priority Tax Claims), the SBA Secured Claim, Allowed Priority Non-Tax Claims, General Unsecured Claims, and the Estate Expenses, each to the extent required by the Plan. The Plan, therefore, is feasible.

### 3.7    Best Interests Test and Liquidation Analysis

Even if a plan is accepted by each Class of Claims and Interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all Holders of Claims or Interests that are Impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires the Bankruptcy Court to find either that all members of an Impaired Class of Claims or Interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such Holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. The Debtor believes that in a chapter 7 liquidation, there would be additional costs and expenses that the Estate would incur as a result of liquidating in chapter 7, including the expenses of the chapter 7 trustee and his or her professionals, which include attorneys and accountants. Such expenses would be avoided if the Plan is confirmed. Further, although a chapter 7 trustee may be entitled to bring Causes of Action to recover Cash for the chapter 7 estate, other than the insurance litigation causes of action included in Exhibit 2, the Debtor, based on its investigations and information presently available to it, does not believe a chapter 7 trustee is likely to recover significant additional Cash for the Estate through such Cause of Action, net of fees and expenses incurred to bring such Cause of Action. Accordingly, the Debtor submits that Holders of Allowed Claims would receive less than anticipated under the Plan if the Chapter 11 Case was converted to a chapter 7 case, and, therefore, to the extent an Impaired Class does not accept the Plan, the classification and treatment of such Claims and Interests in the Plan satisfy section 1129(a)(7) of the Bankruptcy Code.

### 3.8    Other Requirements of section 1129 of the Bankruptcy Code

The Debtor submits that the Plan meets, or will meet, all the other requirements of section 1129 of the Bankruptcy Code, including that the Plan was proposed in good faith. To the extent required, the Debtor will submit an evidentiary record in advance of the Confirmation Hearing to support any required findings.

### 3.9    Classification and Treatment of Claims and Interests Under the Plan

Section 1123 of the Bankruptcy Code provides that a plan must classify the Claims and Interests of a debtor's Creditors and equity Interest Holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those Unclassified Claims that, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be and have not been classified).

Under section 1122 of the Bankruptcy Code, a plan also must classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class. The Debtor submits that the Plan's classifications provide for the substantially similar placement of Claims in the same Class—on a consolidated basis—and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

24826666.v4

The following is a chart summarizing the Unclassified and Classified Claims in the Plan, with a further discussion below:[3]

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (Yes/No) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims (including Administrative Expenses, the DIP Financing Claim, Professional Fee Claims, and U.S. Trustee Fees) | Unimpaired | No | 100% |
| Class 1: BOG Secured Claim | Impaired | Yes | 100% |
| Class 2: SBA Secured Claim | Unimpaired | Presumed to accept Plan | 100% |
| Class 3: Priority Tax Claims | Unimpaired | Presumed to accept Plan | 100% |
| Class 4: Priority Non-Tax Claims | Unimpaired | Presumed to accept Plan | 100% |
| Class 5: General Unsecured Claims | Unimpaired | Presumed to accept Plan | 100% |
| Class 6: Subordinated Intercompany Claims | Unimpaired | Presumed to accept Plan | 100% |
| Class 7: Interests (of Mathews Pothen) | Unimpaired | Presumed to accept Plan | 100% |

### 1. Unclassified Claims

Under the Plan, certain Claims are not placed into Classes. Instead, such Claims are Unclassified Claims. Unclassified Claims are Unimpaired, and Holders of Unclassified Claims do not vote on the Plan because they are automatically entitled to the specific treatment provided for the Unclassified Claims in the Bankruptcy Code or the Claim treatment has been agreed upon by the Debtor and a particular Creditor. The Plan provides for the following regarding Unclassified Claims:

(a) <u>Administrative Expenses</u>. Each Holder of an Allowed Administrative Expense, including the Allowed DIP Financing Claim or an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Expense becomes Allowed in accordance with this Plan, in full and final satisfaction of, and in exchange for, such Allowed Administrative Expense: (a) Cash equal to the amount of such Allowed Administrative Expense; or (b) such other

---

[3]     This summary is provided for illustrative purposes, and qualified in its entirety by the terms of the Plan.

11

24826666.v4

treatment as to which the Debtor and the Holder of such Allowed Administrative Expense shall have agreed upon in writing. Holders of Disallowed Administrative Expenses shall not receive any Distribution under this Plan.

i) <u>Final Administrative Expense Bar Date</u>. Holders of Administrative Expenses accruing from either the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtor requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Expense Bar Date. The Debtor shall pay all Allowed Administrative Expenses (other than Professional Fee Claims) not later than five business days after such Claims become Allowed, unless otherwise agreed between the Debtor and the Holder of the Allowed Administrative Expense. **Any Administrative Expense not already Allowed (other than Professional Fee Claims and U.S. Trustee Fees) not Filed with the Court by the Final Administrative Expense Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Court or the Debtor; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Final Administrative Expense Bar Date is the date that is 30 days after the Effective Date of the Plan. For the sake of clarity and notwithstanding the foregoing, the DIP Financing Claim is Allowed pursuant to the DIP Financing Order and no further Filing shall be required for the DIP Financing Claim to be treated as Allowed pursuant to the Plan.**

ii) <u>Professional Fee Bar Date</u>. Professional Fee Claims are Administrative Expenses, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Court on or before the Professional Fee Bar Date. The Debtor shall pay all Allowed Professional Fee Claims not later than two business days after entry of an Order by the Court allowing such Claim, unless otherwise agreed between the Debtor and the Holder of the Allowed Professional Fee Claim. **If an application for a Professional Fee Claim is not Filed with the Court by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Professional Fee Bar Date is 45 days after the Effective Date of the Plan.**

(b) <u>U.S. Trustee Fees</u>. All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtor when due in the ordinary course under applicable law. After the Effective Date, the Debtor shall pay any and all U.S. Trustee Fees when due and payable.

(c) <u>Disputed Unclassified Claims</u>. Except as otherwise set forth in Article 3.2 of the Plan, if an unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Article V of the Plan.

2. **Classified Claims and Interests**

The Bankruptcy Code requires certain types of Claims and Interests to be placed into Classes. The Plan provides for the following regarding Claims in Classes:

24826666.v4

(a)     <u>Treatment of the BOG Secured Claim (Class One)</u>: The Holder of the BOG Secured Claim has received, out of the proceeds of the Sale, and in final satisfaction of such Allowed Class One Claim, payment in in Cash of its Allowed BOG Secured Claim in the amount of $32,503,544.87, which reflects payment in an amount less than all accrued and asserted interest due at that time. **Such Claim in Class One is Impaired and is entitled to vote on the Plan.**

(b)     <u>Treatment of SBA Secured Claims (Class Two)</u>: The Holder of the Allowed SBA Secured Claim against the Debtor shall receive, promptly after the date on which the SBA Secured Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Allowed SBA Secured Claim, either: (i) payment in full of the SBA Secured Claim; or (ii) such other treatment as the Debtor and the Holder of such the SBA Secured Claim shall have agreed. **Such Claims in Class Two are Unimpaired and not entitled to vote on the Plan.**

(c)     <u>Treatment of Priority Tax Claims (Class Three)</u>: Each Holder of an Allowed Priority Tax Claim against the Debtor shall receive, promptly after the date on which such Priority Tax Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Allowed Priority Tax Claim, either: (i) Cash equal to the unpaid amount of such Allowed Priority Tax Claim; or (ii) such other treatment as the Debtor and the Holder of such Allowed Priority Tax Claim shall have agreed. **Such Claims in Class Three are, therefore, Unimpaired and not entitled to vote on the Plan.**

(d)     <u>Treatment of Priority Non-Tax Claims (Class Four)</u>: Each Holder of an Allowed Priority Non-Tax Claim has already received payment in full pursuant to the Wages Order and, therefore, all such claims are deemed satisfied in full and shall not be entitled to any Distributions hereunder. **Such Claims in Class Four are, therefore, Unimpaired and not entitled to vote on the Plan.**

(e)     <u>Treatment of General Unsecured Claims, including Rejection Damages Claims (Class Five)</u>: On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Debtor agree to a less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive payment in full of its Allowed General Unsecured Claim. The Debtor is not aware of and does not anticipate any Rejection Damages Claims. **Such Claims in Class Five are, therefore, Unimpaired and not entitled to vote on the Plan.**

(f)     <u>Treatment of Subordinated Intercompany Claims (Class Six)</u>: Subordinated Intercompany Claims shall be Reinstated. **Such Claims in Class Six are, therefore, Unimpaired and deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.**

(g)     <u>Treatment of Interests in the Debtor (Class Seven)</u>: The Holders of Interests in Class Seven shall receive and retain any and all property or interests in property on account of such Interests. **Such Interests in Class Seven are, therefore, Unimpaired and deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.**

### 3.10   Plan Bar Dates

The Plan establishes certain bar dates, including the following:

13

a)     Final Administrative Expense Bar Date.     Holders of Administrative Expenses accruing from the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtor requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Expense Bar Date.  **Any Administrative Expense (other than Professional Fee Claims and U.S. Trustee Fees) not Filed by the Final Administrative Expense Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court or the Debtor; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.**

b)     Professional Fee Bar Date.  Professional Fee Claims are Administrative Expenses, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.  The Debtor shall pay all Allowed Professional Fee Claims not later than two business days after entry of an Order by the Bankruptcy Court allowing such Claim, unless otherwise agreed between the Debtor and the Holder of the Allowed Professional Fee Claim.  **If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.**

### 3.11     Treatment of Executory Contracts and Unexpired Leases

Pursuant to the Sale Order and Asset Purchase Agreement, all contracts and leases of the Debtor other than the Assumed Contracts (as defined in the Asset Purchase Agreement), with the exception of the Take Care insurance plan (to the extent that the Take Care insurance plan is an executory contract) were deemed rejected (collectively, the "Rejected Contracts") by the Debtor effective as of the date the Sale closed, which occurred on April 3, 2025 [*see* Docket No. 172]. The Debtor plans to terminate the Take Care insurance plan in the ordinary course of its business as it sees fit in its business judgment.

Article VI of the Plan provides that if the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor or the Estate unless a Proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Bankruptcy Court.  Allowed Rejection Claims shall be classified as General Unsecured Claims in Class Five of the Plan.

The Debtor does not expect to receive any Rejection Damages Claims from its treatment of its Executory Contracts and unexpired leases.

### 3.12     No Admissions

Except as specifically provided in the Plan, nothing contained in the Plan or this Disclosure Statement shall be deemed or construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth in the Plan or the Disclosure Statement (or the exhibits thereto), including the amount or allowability of any Claim, or the value of any remaining assets.

14

### 3.13 EXCULPATION, RELEASE, INJUNCTION

**THE PLAN CONTAINS EXCULPATION, RELEASE AND INJUNCTION PROVISIONS THAT MAY AFFECT YOUR RIGHTS. ALL PARTIES ARE ADVISED TO CAREFULLY REVIEW THE PLAN**.

A summary of the exculpation, release and injunction provisions in the Plan is provided below.

## EXCULPATION AND LIMITATION OF LIABILITY

(a)      **Effective as of the Effective Date, the Exculpated Parties, to the extent of such Exculpated Party's involvement in the Chapter 11 Case, shall neither have nor incur any liability to any Entity or Person for any claims or causes of action arising on or after the Petition Date through and including the Effective Date for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Case; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; or (iii) the approval of the Disclosure Statement or confirmation or consummation of the Plan;** *provided, however*, **that the foregoing provisions shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; provided, further, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit; provided, further, however, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.**

(b)      **The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.**

## DEBTOR RELEASE

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtor and the Estate from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted**

15

or assertable on behalf of the Debtor, or the Estate, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date from, in whole or in part, the Debtor, the Chapter 11 Case, the marketing and Sale process, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Case or arising out of the Sale, the Disclosure Statement, the Plan, the DIP Financing Order, or any related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 9.2 shall be construed to release the Released Parties from gross negligence, willful misconduct, or intentional fraud as determined by a final order. The Debtor and the Estate shall be permanently enjoined from prosecuting any of the foregoing Claims, Interests, or Causes of Action released under this Section 9.2 against each of the Released Parties.

## INJUNCTION

Except as otherwise expressly provided in this Plan or the Confirmation Order, on and after the Confirmation Date, all persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtor, the Estate Assets, or the Estate that arose prior to the Confirmation Date (including, but not limited to, federal, state and other governmental units or agents working on any of their behalf, and any federal or state official, employee, or other entity acting in an individual or official capacity on behalf of any federal, state or other governmental units, except as acting in the exercise of police or regulatory powers) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against the Debtor or the Estate, or any Estate Assets; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtor or the Estate, or any Estate Assets; (iii) creating, perfecting, or enforcing, directly or indirectly, any Lien or Encumbrance of any kind against the Debtor or the Estate, or any Estate Assets; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligations due to Asia Pacific or the Estate, or any Assets of Asia Pacific or the Estate; and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan. Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or Cause of Action against the Debtor or any Estate Asset based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Claim on which the payments due under this Plan have been made or are not yet due under this Plan. Nothing in this Plan shall prevent the Holder of an Allowed Claim from requesting that the

16

Court waive the foregoing paragraph as to such Holder of an Allowed Claim to the extent necessary following a determination by a court of competent jurisdiction that the Debtor has breached is obligations to the Holder of such Allowed Claim under the terms of this Plan.

## ARTICLE IV:
## <u>CERTAIN FEDERAL TAX CONSEQUENCES AND OTHER DISCLOSURES</u>

This discussion is intended only as a summary of certain tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. This discussion is for informational purposes only and is not tax advice. The tax consequences of the Plan may be uncertain or vary depending on particular facts and circumstances.

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE BANKRUPTCY RULES, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR.**

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

**THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION, NOR ANY STATE AUTHORITY, HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT, NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN, CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.**

**THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES**

24826666.v4

LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE," OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON, OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE, AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## ARTICLE V:
## RISK FACTORS IN CONNECTION WITH THE PLAN

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS THAT ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN AND PROVIDED WITH THE PLAN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THE FOLLOWING FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

The following constitute a non-exhaustive list of risk factors associated with the Plan and its implementation:

- The Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan and Disclosure Statement will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

- The Debtor can make no assurances that the requisite acceptances to the Plan will be received, and the Debtor may need to obtain acceptances to an alternative plan of liquidation for the Debtor, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estate under chapter 7 of the Bankruptcy Code.

- There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- There is no assurance regarding the amount of Remaining Cash and Estate Assets that will be available to pay Allowed Claims.

- The Plan provides for certain conditions that must be satisfied prior to confirmation of the Plan and for certain other conditions that must be satisfied prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied.

- There can be no assurance that the exculpation, as provided in Article VIII of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

- **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

### ARTICLE VI:
### RECOMMENDATION AND CONCLUSION

The Debtor believes that the Plan provides the best available alternative for maximizing the recoveries that Creditors may receive from the Estate. The Debtor recommends that all Creditors that are entitled to vote on the Plan, vote to accept the Plan.

*[intentionally left blank; signature page to follow]*

19

**Respectfully submitted,**

**MINAKSHI V. HEMLANI**
**LAW OFFICES OF MINAKSHI V.**
**HEMLANI, P.C.**
285 FARENHOLT AVE., SUITE C-312
TAMUNING, GUAM 96913
TELEPHONE: (671) 588-2030
EMAIL:  mvhemlani@mvhlaw.net

**Dated: September 24, 2025**

*/s/Andrew C. Helman*
_____
**ANDREW C. HELMAN**
(admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL:  andrew.helman@dentons.com

*Counsel to Marianas Properties, LLC*

21