# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| In re | Case No. 24-00013 |
| MARIANAS PROPERTIES, LLC, [1] | Chapter 11 |
| Debtor. | |

## REVISED PLAN OF LIQUIDATION OF MARIANAS
## PROPERTIES, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**MINAKSHI V. HEMLANI**
**LAW OFFICES OF MINAKSHI V.**
**HEMLANI, P.C.**
285 FARENHOLT AVE., SUITE C-312
TAMUNING, GUAM 96913
TELEPHONE: (671) 588-2030
EMAIL:  mvhemlani@mvhlaw.net

**ANDREW C. HELMAN**
(admitted *pro hac vice*)
**DENTONS BINGHAM GREENEBAUM LLP**
ONE CITY CENTER, SUITE 11100
PORTLAND, ME 04101
TELEPHONE: (207) 619-0919
EMAIL:  andrew.helman@dentons.com

*Counsel for the Debtor*

---

[1]     The last four digits of the taxpayer identification number of Marianas Properties, LLC, are 9263. The principal office of Marianas Properties, LLC, is located at 627b Pale San Vitores Road, Tumon, Guam 96913.

# TABLE OF CONTENTS

ARTICLE I: DEFINITIONS AND CONSTRUCTION OF TERMS ............................................. 1

ARTICLE II: CONFIRMATION PROCEDURES .................................................................... 9

    2.1.    Confirmation Procedures ................................................................. 9
    2.2.    Procedure for Objections; Objection Deadline ..................................... 10
    2.3.    Procedures for Voting; Voting Deadline ............................................. 10
    2.4.    Cramdown Confirmation ................................................................. 10

ARTICLE III: CLASSIFICATION OF CLAIMS AND INTERESTS ..................................... 10

    3.1.    Summary of Claims, Classes, Voting, and Projected Recoveries.................. 10
    3.2.    Identification and Treatment of Unclassified Claims ............................. 11
    3.3.    Identification of Classes of Claims and Interests ................................. 12
    3.4.    Treatment of Classified Claims and Interests ....................................... 13
    3.5.    Reservation of Rights; No Allowance of Claims................................... 14
    3.6.    Elimination of Vacant Classes ......................................................... 14
    3.7.    Voting Classes, Presumed Acceptance by Non-Voting Classes................. 14

ARTICLE IV: CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO
                VOTING ..................................................................................... 14

ARTICLE V: MEANS FOR IMPLEMENTATION OF THE PLAN ..................................... 15

    5.1.    Plan Funding. ............................................................................... 15
    5.2.    Vesting and Sale or Other Disposition of Estate Assets; Estate Expenses .......... 15
    5.3.    Release of Liens and Security Instruments .......................................... 16
    5.4.    Cancellation of Notes and Instruments ............................................... 16
    5.5.    Preservation of All Causes of Action and Standing............................... 16
    5.6.    Effectuating Documents and Further Transactions............................... 16
    5.7.    D&O Insurance Policies; Employment Practice Liability Policies; Similar
           Policies. ..................................................................................... 16
    5.8.    Records ....................................................................................... 16
    5.9.    Distributions; Disputed Claim Reserve ............................................. 17

ARTICLE VI: EXECUTORY CONTRACTS ..................................................................... 17

    6.1.    Rejection of Executory Contracts and Unexpired Leases....................... 17

ARTICLE VII: PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND
                DISTRIBUTION OF ESTATE ASSETS ........................................... 17

7.1.    Right to Object to Claims ........................................................................ 17
7.2.    Disallowance of Claims. ......................................................................... 18
7.3.    Distribution Provisions ........................................................................... 18

ARTICLE VIII: EXCULPATION, RELEASES AND INJUNCTION ....................................... 19

8.1.    Exculpation and Limitation of Liability ................................................. 19
8.2.    Debtor Releases ...................................................................................... 20
8.3.    Injunction ................................................................................................ 21

ARTICLE IX: CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ................... 22

9.1.    Conditions Precedent to Confirmation.................................................... 22
9.2.    Conditions Precedent to the Effective Date ........................................... 22
9.3.    Effect of Failure of Conditions .............................................................. 22
9.4.    Filing of Notice of the Effective Date .................................................... 22

ARTICLE X: MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN ............... 22

10.1.  Modification and Amendments................................................................ 22
10.2.  Effect of Confirmation on Modifications ............................................... 23
10.3.  Revocation or Withdrawal of the Plan.................................................... 23

ARTICLE XI: JURISDICTION ................................................................................................ 23

ARTICLE XII: MISCELLANEOUS.......................................................................................... 24

12.1.  Exemption from Taxes............................................................................ 24
12.2.  Compliance with Tax Requirements....................................................... 24
12.3.  Defenses and Setoff ................................................................................ 25
12.4.  Governing Law ....................................................................................... 25
12.5.  Successors and Assigns........................................................................... 25
12.6.  Debtor's Post-Confirmation Management .............................................. 25
12.7.  Immediate Binding Effect....................................................................... 25
12.8.  Severability of Plan Provisions............................................................... 25
12.9.  Exhibits ................................................................................................... 26
12.10. No Admissions........................................................................................ 26
12.11. Conflicts Among Plan Documents.......................................................... 26
12.12. Recommendation .................................................................................... 26

24717743.v10

# INTRODUCTION

The Debtor[2] hereby proposes this Plan of Liquidation, to all of the Debtor's known Holders of Claims and Interests, as authorized by section 1121(a) of the Bankruptcy Code.

## ARTICLE I:
## DEFINITIONS AND CONSTRUCTION OF TERMS

As used in this Plan, the following terms have the following meanings:

**1.1.** "**Administrative Expense**" shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Case as it relates to the Debtor under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, all compensation and reimbursement of expenses awarded or otherwise approved for payment by final order of the Court under sections 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtor's Estate under section 1930 title 28 of the United States Code, all taxes that arose after the Petition Date, and all other Claims entitled to administrative expense status pursuant to a final order of the Court.

**1.2.** "**Affiliate**" shall mean an affiliate as defined in section 101(2) of the Bankruptcy Code.

**1.3.** "**Allowed**" shall mean, with respect to any Claim, the amount of such Claim against the Debtor or an Interest in the Debtor: (a) that has been listed by the Debtor in its Schedules as liquidated in amount and not "Disputed" or "Contingent;" (b) as to which no Objection or request for estimation has been Filed on or before the applicable Claim Objection Deadline under this Plan; (c) as to which any Objection has been settled, waived, withdrawn, or denied by a final order; or (d) that is allowed: (i) by a final order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtor or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as otherwise authorized by the Court or expressly set forth in this Plan.

**1.4.** "**Asset Purchase Agreement**" shall mean that certain *First Amended Asset Purchase Agreement* dated as of February 28, 2025, by and among the Debtor, as seller, and Cartium Enterprise Guam, LLC, as assignee of Eastern Contractors Corporation (together, the Buyer, as defined below), as buyer. A true and correct copy of the Asset Purchase Agreement is filed with the Court at Docket No. 155-1.

**1.5.** "**Ballot**" shall mean the Ballot accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.6.** "**BOG**" shall mean the Bank of Guam.

---

[2]     Capitalized terms used, but not defined at the time of initial use, shall have the meaning set forth in Article I of the Plan.

**1.7.** "**BOG Secured Claim**" shall mean the Secured Claim of BOG, which was filed at Claim 3-1 in the amount of $31,647,133.50 as of January 13, 2025.

**1.8.** "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Case.

**1.9.** "**Bankruptcy Rules**" shall mean, when referenced generally: (i) the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (iii) the applicable Local Rules; and (iv) any standing orders governing practice and procedure issued by the Court and/or the District Court associated with the Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

**1.10.** "**Business Day**" shall mean any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.11.** "**Buyer**" shall mean Cartium Enterprise Guam, LLC, a Guam limited liability company, as assignee of Eastern Contractors Corporation, a Georgia Corporation, and each as referred to by the Asset Purchase Agreement and the Sale Order.

**1.12.** "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

**1.13.** "**Causes of Action**" shall mean all claims, causes of action, controversies, obligations, suits, judgments, damages, demands, debts, rights, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other similar state law claims and causes of action, Liens, indemnities, guaranties, suits, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, arising in law, equity or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action shall also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

**1.14.** "**Chapter 11 Case**" shall mean the Debtor's Chapter 11 Case, proceeding before the Court as Case No. 24-00013. All citations herein to the docket shall refer to the Chapter 11 Case, unless otherwise stated.

**1.15.** "**Claim(s)**" shall mean a claim or claims against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.16.** "**Claims Register**" means the official register of Claims maintained by the Court.

**1.17.** "**Claims Objection Deadline**" shall mean 60 days after the Effective Date, or such later date as may be ordered by the Court, *provided however*, that the Debtor may File one or more motions with the Court to extend the Claims Objection Deadline. The Claims Objection Deadline shall also constitute the deadline for the Debtor to object to any Administrative Expenses, Claims, or Interests (other than Professional Fee Claims).

**1.18.** "**Class**" shall mean a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

**1.19.** "**Confirmation**" means the Court's entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article IX of the Plan having been satisfied.

**1.20.** "**Confirmation Date**" shall mean the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Case, unless otherwise stated in the Confirmation Order.

**1.21.** "**Confirmation Hearing**" shall mean the hearing held by the Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

**1.22.** "**Confirmation Order**" shall mean the final order of the Court confirming the Plan.

**1.23.** "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.24.** "**Court**" shall mean the United States District Court for the District of Guam – Bankruptcy Division.

**1.25.** "**Creditor**" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

**1.26.** "**Debtor**" shall mean Marianas Properties, LLC and shall be construed to include Marianas Properties, LLC as the Reorganized Debtor after the Effective Date as applicable.

**1.27.** "**Dentons**" shall mean Dentons Bingham Greenebaum, LLP, and any other business unit of or within Dentons Group.

**1.28.** "**DIP Financing Lender**" shall mean Mathews Pothen in his capacity as lender pursuant to the DIP Financing Order.

**1.29.** "**DIP Financing Claim**" shall mean the administrative expense claim of the DIP Financing Lender in the amount of $1,498,090.47 as of August 31, 2025, which has been Allowed for the purpose of this Plan pursuant to the DIP Financing Order.

**1.30.** "**DIP Financing Order**" shall mean the *Final Order Granting Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Authorizing the Debtor's Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 121].

**1.31.** "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor that: (i) has been disallowed, waived, or released, in whole or part, by a final order (including, but not limited to, the Confirmation Order); (ii) has been withdrawn, waived, or released by agreement of the Holder thereof and the Debtor in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if identified in the Schedules and listed (a) as zero or as Disputed, Contingent, and/or unliquidated and (b) in respect of which a Proof of Claim or a Proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any final order or other applicable law or as otherwise agreed; (v) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim or Proof of Interest; or (vi) is not listed in the Schedules and as to which no timely and proper Proof of Claim or Proof of Interest has been Filed in accordance with the Notice of Chapter 11 Case or any other applicable final order establishing a bar date in the Chapter 11 Case, including as to any Rejection Damages Claim; *provided, however*, that, if the Holder of an Interest in the Debtor has not filed a Proof of Interest prior to the Effective Date then such Interest shall not be deemed Disallowed pursuant to this section, notwithstanding the foregoing requirements of this section.

**1.32.** "**Disclosure Statement**" shall mean that certain disclosure statement Filed by the Debtor with respect to this Plan, as the same may be amended, supplemented, revised, or modified from time to time, and approved as containing adequate information pursuant to a final order, including, without limitation, all exhibits, appendices, and schedules attached thereto.

**1.33.** "**Disputed**" shall mean any Claim or Interest that has not yet been Allowed or Disallowed, including by operation of this Plan.

**1.34.** "**Distribution**" shall mean any distribution made pursuant to the Plan by the Debtor to the Holder of an Allowed Claim or Allowed Interest.

**1.35.** "**Effective Date**" shall mean the first Business Day after the Confirmation Order becomes a final order. If the Confirmation Order has been stayed and that stay remains in place after the Effective Date would have occurred, the Effective Date shall mean the first Business Day following the date upon which any stay of the Confirmation Order is no longer effective.

**1.36.** "**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

**1.37.** "**Estate**" shall mean the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code.

**1.38.** "__Estate Assets__" means all assets of the Debtor or property in which the Debtor had any interest that (i) exist immediately prior to the Effective Date and are not otherwise used by the Debtor to make Distributions on the Effective Date to or for the benefit of Holders of Allowed Administrative Expenses, Priority Non-Tax Claims, Professional Claims, and Secured Claims; and (ii) are not Purchased Assets. The Estate Assets also include, without limitation, to the extent not otherwise expressly excluded by this definition: (A) the Remaining Cash; (B) all Causes of Action the Debtor hold or may hold against any Person or Entity as of the Effective Date (except to the extent they are the subject of any of the Releases set forth in the Plan); (C) all Claims and rights of the Debtor under any Insurance Policies; (D) any and all other non-Cash assets, interests, rights, claims and defenses of the Debtor or the Estate, including, without limitation, all rights under any order of the Court; (E) any and all tax refunds to which the Debtor may be entitled; and (F) any and all proceeds of any of the foregoing.

**1.39.** "__Estate Expenses__" means all reasonable and documented fees, expenses, and costs incurred by the Debtor (including, but not limited to, payment of statutory fees, compensation of the, and the reasonable fees and expenses of professionals or other persons retained by the Debtor) in connection with carrying out the duties and responsibilities set forth in the Plan, which duties and responsibilities shall be funded solely from the Estate Assets.

**1.40.** "__Exculpated Parties__" shall mean collectively, and in each instance, solely in the capacities as such: (a) the Debtor; (c) the Debtor's officers, directors, agents, employees, and members; and (b), all Professionals who acted on the Debtor's behalf in connection with the matters as to which exculpation is provided herein.

**1.41.** "__Executory Contract__" shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.42.** "__File__," "__Filed__," or "__Filing__" shall mean, respectively, file, filed, or filing with the Court in the Chapter 11 Case; *provided, however*, that with respect to Proofs of Claim and Proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by and consistent with the Notice of Chapter 11 Case or as otherwise established by a final order.

**1.43.** "__Final Administrative Expense Bar Date__" shall mean the date that is thirty days after the Effective Date, which shall also be the deadline for Filing requests for payment of Administrative Expenses (other than Professional Fee Claims) that: (i) arose after the Petition Date; and (ii) were not paid as of the Effective Date.

**1.44.** "__General Bar Date__" shall mean January 14, 2025, as fully set forth in the Notice of Chapter 11 Case.

**1.45.** "__General Unsecured Claim__" shall mean any unsecured Claim against the Debtor that arose or is deemed by the Bankruptcy Code or Court, as the case may be, not to be: (i) an Administrative Expense; (ii) a Priority Tax Claim; or (iii) a Priority Non-Tax Claim.

**1.46.** "__Governmental Unit__" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.47.** "**Governmental Bar Date**" shall mean March 11, 2025, as fully set forth in the Notice of Chapter 11 Case.

**1.48.** "**Holder**" or "**Holders**" shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

**1.49.** "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.50.** "**Insider**" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

**1.51.** "**Insurance Policies**" shall mean any and all policies of insurance under which the Debtor is insured, including as an additional insured, and specifically including the Debtor's policy of insurance with DB Insurance Co., Ltd. (policy #511393-993577 (KMF5789-A03)) under which the Debtor asserts that it holds a claim].

**1.52.** "**Intercompany Claim**" shall mean any Claim held against the Debtor by an Affiliate of the Debtor, or any claim held by the Debtor against an Affiliate of the Debtor.

**1.53.** "**Interests**" shall mean the equity or equivalent ownership interests of any Person or Entity in the Debtor.

**1.54.** "**IRS**" shall mean the Internal Revenue Service and/or assigns.

**1.55.** "**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code.

**1.56.** "**Local Rules**" shall mean the Bankruptcy Local Rules of the United States District Court for the District of Guam – Bankruptcy Division.

**1.57.** "**Notice of Chapter 11 Case**" shall mean that certain *Notice of Chapter 11 Case* [Docket No. 37], which established, *inter alia*, the General Bar Date and the Governmental Bar Date.

**1.58.** "**Objection(s)**" shall mean any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim or Interest (including, but not limited to, the resolution of any Filing seeking payment of any Administrative Expense).

**1.59.** "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.60.** "**Petition Date**" shall mean September 12, 2024, the date on which the Debtor commenced the Chapter 11 Case in the Court.

**1.61.** "**Plan**" shall mean this plan under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified, or supplemented from time to time, including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules, and including all exhibits and schedules hereto.

**1.62.** "**Priority Non-Tax Claim**" shall mean any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense.

**1.63.** "**Priority Tax Claim**" shall mean a Claim, or a portion of a Claim, accorded priority under section 507(a)(8) of the Bankruptcy Code. To the Debtor's knowledge, the only Priority Tax Claim Filed by the applicable deadline was filed by the IRS at Claim No. 1-2.

**1.64.** "**Pro Rata**" shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

**1.65.** "**Professional**" shall mean any professional employed in the Chapter 11 Case by a final order pursuant to Bankruptcy Code sections 327, 328, or 1103, which shall include, but not be limited to, Dentons; Gibbins Advisors, LLC; and The Law Offices of Minakshi V. Hemlani, P.C.

**1.66.** "**Professional Fee Bar Date**" shall mean the deadline for Filing all final applications for allowance of Professional Fee Claims, which deadline shall be 45 days after the Effective Date.

**1.67.** "**Professional Fee Claims**" shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**1.68.** "**Purchased Assets**" shall mean those certain assets of the Debtor purchased by the Buyers pursuant to the Sale Order and the Asset Purchase Agreement.

**1.69.** "**Reinstatement**" shall mean, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

**1.70.** "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract rejected by the Debtor must File a Proof of Claim for damages arising from such rejection, and shall be, except as otherwise set forth in a separate final order of the Court authorizing the rejection of an Executory Contract and setting a different date for any Entity to assert a Claim arising from such rejection, thirty days after the Effective Date of the Plan.

**1.71.** "**Rejection Damages Claim**" shall mean any timely Filed Claim for amounts due as a result of the rejection by the Debtor of any Executory Contract under section 365 of the Bankruptcy Code.

**1.72.** "**Related Persons**" shall mean, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's current and former, employees, agents, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

**1.73.** "**Released Parties**" shall mean, collectively, and in each case, solely in their capacities as such: (a) the Debtor; (b) the current and former employees of the Debtor; and (c) each of such Entities' Related Persons.

**1.74.** "**Releasing Parties**" shall mean collectively, and in each case, solely in their respective capacities as such: (a) the Released Parties; and (b) with respect to any Person or Entity solely in their capacity as such (provided that with respect to any Related Persons identified herein, each such Person constitutes a Releasing Party under this clause solely with respect to derivative claims that such Related Person could have properly asserted on behalf of a Person identified in clause (a) of the definition of Releasing Parties).

**1.75.** "**Remaining Cash**" shall mean the actual sum of Cash that constitutes Estate Assets after: (i) the payment of Cash necessary to satisfy all Allowed Unclassified Claims that are Allowed on or prior to the Effective Date; and (ii) the payment of all Allowed Claims payable on the Effective Date as applicable.

**1.76.** "**Remaining Estate Funds**" shall mean the actual sum of Cash held by the Debtor on the Effective Date.

**1.77.** "**Sale**" shall mean the sale of the Purchased Assets to the Buyers pursuant to the Asset Purchase Agreement and the Sale Order, which closed on April 3, 2025.

**1.78.** "**Sale Order**" shall mean the *Order Granting Motion for Authority to Sell Certain Assets of Marianas Properties, LLC, to Assume and Assign Certain Unexpired Leases and Executory Contracts, and to Assign Permits and Licenses in Relation Thereto* [Docket No. 167].

**1.79.** "**SBA**" shall mean the United States Small Business Administration.

**1.80.** "**SBA Secured Claim**" shall mean the Secured Claim of the SBA, which was filed at Claim No. 2-1 in the amount totaling $164,208.90 as of February 7, 2025.

**1.81.** "**Schedules**" shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts, and Statements of Financial Affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time, which were Filed in the Chapter 11 Case.

**1.82.** "**Secured Claim**" shall mean a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.83.** "**Subordinated Intercompany Claims**" shall mean all Intercompany Claims amongst the Debtor and any Affiliates of the Debtor.

**1.84.** "**Tax**" or "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, and duties, value added taxes, assessments, or charges (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.85.** "**Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

**1.86.** "**Unclassified Claims**" shall mean the Claims that are not placed in a Class, as set forth in Article III of the Plan.

**1.87.** "**Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.88.** "**U.S. Trustee**" shall mean the Office of the United States Trustee.

**1.89.** "**U.S. Trustee Fees**" shall mean the fees payable pursuant to 28 U.S.C. § 1930.

**1.90.** "**Voting Deadline**" shall have the meaning ascribed in Article 2.3.

**1.91.** "**Wages Order**" shall mean the *Final Order Granting Debtor's Motion for Entry of an Order Authorizing Payment of Certain Pre-Petition (I) Wages, Salaries, and Other Compensation; (II) Reimbursable Employee Expenses; (III) Employee Benefits; and (IV) Related Costs* [Docket No. 109].

**1.92.** "**Wage Claims**" shall mean any Employee Obligations (as that term is defined in the Wages Order) that were paid by the Debtor during the Chapter 11 Case pursuant to the Wages Order.

**ARTICLE II:**
**CONFIRMATION PROCEDURES**

**2.1.     Confirmation Procedures**

The Confirmation Hearing shall occur on **[_____] [ ], 2025 at [ ]:00 a.m.** (prevailing Eastern Time) at the Court, District Court of Guam, 520 W. Soledad Ave Floor 4, Hagåtña, GU 96910 (or via telephone or Zoom upon instructions to be timely provided). The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Court.

## 2.2.   Procedure for Objections; Objection Deadline

Any objection to confirmation of the Plan must be: (i) made in writing; and (ii) Filed with the Court and served on counsel for the Debtor so as to be actually received on or before **[_____] [ ], 2025**. **Unless an objection is timely Filed and served, it may not be considered by the Court at the Confirmation Hearing**. The addresses for the Debtor and the Court are as follows:

To the Debtor:

By Mail:      Dentons Bingham Greenebaum LLP
              Andrew C. Helman
              One City Center, Suite 11100
              Portland, ME 04101

By Email:     andrew.helman@dentons.com
              kyle.d.smith@dentons.com

To the Court:

By Mail:      U.S. District Court for the District of Guam – Bankruptcy Division
              520 W. Soledad Ave Floor 4
              Hagåtña, GU 96910

## 2.3.   Procedures for Voting; Voting Deadline

For a vote to be counted, the Ballot must be properly completed, signed, and returned so that it is actually received by the Debtor by no later than 11:59 p.m. **[_____] [__], 2025 (the "Voting Deadline")**, unless such time is extended in writing by the Debtor. Ballots may be by United States Mail, postage pre-paid; other similar delivery of paper ballots, or by e-mail send to andrew.helman@dentons.com and kyle.d.smith@dentons.com.

## 2.4.   Cramdown Confirmation

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTOR MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE.**

## ARTICLE III:
## CLASSIFICATION OF CLAIMS AND INTERESTS

## 3.1.   Summary of Claims, Classes, Voting, and Projected Recoveries

The following chart summarizes the categories and treatment of Claims and Interests under this Plan, as well as describing whether Holders of Claims and Interests are entitled to vote on this Plan, and the projected recovery for each under this Plan. All parties are advised to read this Plan in its entirety and not to rely exclusively on this summary.

24717743.v10

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (Yes/No) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims (including Administrative Expenses, the DIP Financing Claim, Professional Fee Claims, and U.S. Trustee Fees) | Unimpaired | No | 100% |
| Class 1: BOG Secured Claim | Impaired | Yes | 100% |
| Class 2: SBA Secured Claim | Unimpaired | Presumed to accept Plan | 100% |
| Class 3: Priority Tax Claims | Unimpaired | Presumed to accept Plan | 100% |
| Class 4: Priority Non-Tax Claims | Unimpaired | Presumed to accept Plan | 100% |
| Class 5: General Unsecured Claims | Unimpaired | Presumed to accept Plan | 100% |
| Class 6: Subordinated Intercompany Claims | Unimpaired | Presumed to accept | 100% |
| Class 7: Interests (of Mathews Pothen) | Unimpaired | Presumed to accept | 100% |

### 3.2. Identification and Treatment of Unclassified Claims

The following Claims shall be Unclassified Claims under the Plan:

a) <u>Administrative Expenses</u>. Each Holder of an Allowed Administrative Expense, including the Allowed DIP Financing Claim or an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Expense becomes Allowed in accordance with this Plan, in full and final satisfaction of, and in exchange for, such Allowed Administrative Expense: (a) Cash equal to the amount of such Allowed Administrative Expense; or (b) such other treatment as to which the Debtor and the Holder of such Allowed Administrative Expense shall have agreed upon in writing. Holders of Disallowed Administrative Expenses shall not receive any Distribution under this Plan.

i. <u>Final Administrative Expense Bar Date</u>. Holders of Administrative Expenses accruing from either the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Debtor requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Expense Bar Date. The Debtor shall pay all Allowed Administrative Expenses (other than Professional Fee Claims) not later than fourteen calendar days after such Claims become Allowed, unless otherwise agreed between the Debtor and the Holder of the Allowed Administrative Expense. **Any Administrative Expense not already**

**Allowed (other than Professional Fee Claims and U.S. Trustee Fees) not Filed with the Court by the Final Administrative Expense Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Court or the Debtor; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Final Administrative Expense Bar Date is the date that is 30 days after the Effective Date of the Plan. For the sake of clarity and notwithstanding the foregoing, the DIP Financing Claim is Allowed pursuant to the DIP Financing Order and no further Filing shall be required for the DIP Financing Claim to be treated as Allowed pursuant to this Plan.**

ii.    <u>Professional Fee Bar Date</u>.    Professional Fee Claims are Administrative Expenses, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Court on or before the Professional Fee Bar Date. The Debtor shall pay all Allowed Professional Fee Claims not later than two business days after entry of an Order by the Court allowing such Claim, unless otherwise agreed between the Debtor and the Holder of the Allowed Professional Fee Claim. **If an application for a Professional Fee Claim is not Filed with the Court by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Professional Fee Bar Date is 45 days after the Effective Date of the Plan.**

b)    <u>U.S. Trustee Fees</u>.    All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtor when due in the ordinary course under applicable law. After the Effective Date, the Debtor shall pay any and all U.S. Trustee Fees when due and payable.

c)    <u>Disputed Unclassified Claims</u>.    Except as otherwise set forth in this Article 3.2, if an unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Article V of the Plan.

### 3.3.    Identification of Classes of Claims and Interests

The following shall constitute the Classes of Claims and Interests under this Plan:

a)    **Class One**: shall contain the BOG Secured Claim.

b)    **Class Two**: shall contain the SBA Secured Claim.

c)    **Class Three**: shall contain the Priority Tax Claims.

d)    **Class Four**: shall contain the Priority Non-Tax Claims, which consist only of Wage Claims.

e)    **Class Five**: shall contain the General Unsecured Claims.

f)    **Class Six**: shall contain the Subordinated Intercompany Claims.

g)    **Class Seven**: shall contain the Interests in the Debtor.

### 3.4. Treatment of Classified Claims and Interests

a)  **Treatment of the BOG Secured Claim (Class One)**: The Holder of the BOG Secured Claim has received, out of the proceeds of the Sale, and in final satisfaction of such Allowed Class One Claim, payment in Cash of its Allowed BOG Secured Claim in the amount of $32,503,544.87, which reflects payment in an amount less than all accrued and asserted interest due at that time. **Such Claim in Class One is Impaired and is entitled to vote on the Plan.**

b)  **Treatment of SBA Secured Claim (Class Two)**: The Holder of the Allowed SBA Secured Claim against the Debtor shall receive, promptly after the date on which the SBA Secured Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Allowed SBA Secured Claim, either: (i) payment in full of the SBA Secured Claim; or (ii) such other treatment as the Debtor and the Holder of such SBA Secured Claim shall have agreed. **Such Claims in Class Two are Unimpaired and not entitled to vote on the Plan.**

c)  **Treatment of Priority Tax Claims (Class Three)**: Each Holder of an Allowed Priority Tax Claim against the Debtor shall receive, promptly after the date on which such Priority Tax Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Allowed Priority Tax Claim, either: (i) Cash equal to the unpaid amount of such Allowed Priority Tax Claim; or (ii) such other treatment as the Debtor and the Holder of such Allowed Priority Tax Claim shall have agreed. **Such Claims in Class Three are, therefore, Unimpaired and not entitled to vote on the Plan.**

d)  **Treatment of Priority Non-Tax Claims (Class Four)**: Each Holder of an Allowed Priority Non-Tax Claim has already received payment in full pursuant to the Wages Order and, therefore, all such claims are deemed satisfied in full and shall not be entitled to any Distributions hereunder. **Such Claims in Class Four are, therefore, Unimpaired and not entitled to vote on the Plan.**

e)  **Treatment of General Unsecured Claims, including Rejection Damages Claims (Class Five)**: On, or as soon as reasonably practicable after, the Effective Date, except to the extent such Holder and the Debtor agree to a less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive payment in full of its Allowed General Unsecured Claim plus post-petition interest of 6% at the legal rate of interest pursuant to 18 G.C.A. § 47106. The Debtor is not aware of and does not anticipate any Rejection Damages Claims. **Such Claims in Class Five are, therefore, Unimpaired and not entitled to vote on the Plan.**

f)  **Treatment of Subordinated Intercompany Claims (Class Six)**: Subordinated Intercompany Claims shall be Reinstated. **Such Claims in Class Six are, therefore, Unimpaired and deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.**

g)  **Treatment of Interests in the Debtor (Class Seven)**: The Holders of Interests in Class Seven shall retain any and all property or interests in property on account of such Interests. **Such Interests in Class Seven are, therefore, Unimpaired and deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.**

### 3.5. Reservation of Rights; No Allowance of Claims

For the avoidance of doubt, the Debtor reserves all rights to object to any Claim on any basis, and nothing herein shall Allow or be deemed to Allow any Claim, except to the extent a Claim is explicitly Allowed under the Plan by agreement of the Debtor.

### 3.6. Elimination of Vacant Classes

Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 3.7. Voting Classes, Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims in such Class shall be deemed to have accepted the Plan.

## ARTICLE IV:
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

The following constitute a non-exhaustive list of risk factors associated with this Plan and its implementation:

- The Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan and Disclosure Statement will affect any Claim, interest, right, or action with regard to the Debtor.

- The Debtor can make no assurances that the requisite acceptances to the Plan will be received, and the Debtor may need to obtain acceptances to a chapter 11 plan for the Debtor, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estate under chapter 7 of the Bankruptcy Code.

- There is no assurance that the Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- There is no assurance regarding the amount of Cash that will be available to pay Allowed Claims.

- The Plan provides for certain conditions that must be satisfied prior to confirmation of the Plan and for certain other conditions that must be satisfied prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied.

- There can be no assurance that exculpation, as provided in Article VIII of the Plan, will be granted. Failure of the Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

- **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE V:
## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1. Plan Funding.** This Plan will be funded from the following sources: (i) the Remaining Estate Funds; (ii) the Remaining Cash; (iii) any refunds, deposits, or other monies owing to the Debtor which were not sold to Buyer; (iv) any other monetary recoveries obtained by the Debtor that do not constitute Purchased Assets.

**5.2. Vesting and Sale or Other Disposition of Estate Assets; Estate Expenses**

(a) On the Effective Date, all Estate Assets, including all Causes of Action and any property acquired by the Debtor pursuant to the Plan, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.

(b) On and after the Effective Date, the Debtor may use, acquire, sell, liquidate, dispose, and distribute the Estate Assets or the proceeds thereof, without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan or the Confirmation Order.

(c) On and after the Effective Date, the Debtor shall have the exclusive authority to compromise or settle any Claims, Objections, or Causes of Action, <u>provided</u> that any such compromise or settlement with an aggregate monetary value that exceeds $25,000.00 shall be subject to entry of an order from the Court approving the compromise or settlement upon a motion by the Debtor, which such motion shall be considered under the standards applicable to Bankruptcy Rule 9019.

(d) On and after the Effective Date, the Debtor shall be authorized to pay the Estate Expenses, in the Debtor's reasonable discretion, without further order or notice except as set forth herein, provided that nothing in this Plan shall relieve the Debtor of any obligation to File post-confirmation operating reports pursuant to applicable law.

**All Holders of Claims entitled to Distributions under the Plan, as a condition to receiving any Distribution, shall provide the Debtor with a completed and executed Tax Form W-8 or Tax Form W-9, as applicable, or similar form within 45 days of a written request by the** Debtor **or be forever barred from receiving a Distribution.**

### 5.3. Release of Liens and Security Instruments

As of the Effective Date, all Liens against any Estate Assets to be distributed under the Plan, including by virtue of such Estate Assets vesting in the Debtor on the Effective Date, shall be fully released, and all of the right, title, and interest of any Holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against rights under this Plan. For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Estate Assets shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Court or filing updated Schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 5.4. Cancellation of Notes and Instruments

As of the Effective Date, all notes, agreements, and securities evidencing Claims and the rights thereunder of the Holders thereof, shall, with respect to the Debtor, be canceled and terminated, and such instruments shall evidence no such rights, except the right to receive the Distributions provided for in this Plan.

### 5.5. Preservation of All Causes of Action and Standing

In accordance with section 1123(b) of the Bankruptcy Code, the Debtor may enforce and prosecute any and all claims that the Debtor or the Estate may have against any Person or Entity that constitute Causes of Action, subject to the provisions of this Plan.

### 5.6. Effectuating Documents and Further Transactions

On and after the Effective Date, the Debtor shall be authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents, except those expressly required pursuant to the Plan.

### 5.7. D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies.

Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any directors and officers insurance policy, employment practices or similar liability insurance policy (including, without limitation, policies for the benefit of the Debtor's directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date). Further, nothing in this Plan shall alter, affect, or limit any rights of the Debtor under any Insurance Policies, including any Causes of Action to enforce claims or rights thereunder.

### 5.8. Records

Upon the Effective Date, the Debtor may retain those documents maintained by the Debtor in the ordinary course of its business and which were not otherwise transferred to a third party

prior to the Effective Date. After the Effective Date, the Debtor shall be authorized to destroy any documents it deems necessary or appropriate in its reasonable judgment without further order from the Court; *provided*, *however*, that the Debtor shall not destroy any documents, including, but not limited to, tax documents, that the Debtor is required to retain under applicable law.

### 5.9. Distributions; Disputed Claim Reserve

The Debtor shall make a full Distribution (the "Distribution") to Holders of Allowed Claims or Interests in Classes One, Two, Four, Five, Six, and Seven, as applicable, from available Cash on the Effective Date. The Debtor retains the right to object to the Priority Tax Claim of the IRS in Class Three within sixty (60) days of the entry of an Order confirming this Plan. However, nothing shall preclude the Debtor from seeking Court authority to extend for cause the deadline to object to the IRS Priority Tax Claim in Class Three.

For purposes of the Distribution, the Debtor shall: (i) estimate the amount of each Disputed Claim in Class Three, as applicable at such time; and (ii) reserve: (y) sufficient Cash (the "Disputed Claim Reserve") to make the Pro Rata Distribution to the Holder of any Disputed Claim in Class Three if such Disputed Claim becomes an Allowed Claim, and (z) sufficient Cash to fund any remaining Estate Expenses.

### ARTICLE VI:
### EXECUTORY CONTRACTS

### 6.1. Rejection of Executory Contracts and Unexpired Leases

**Pursuant to the Sale Order and Asset Purchase Agreement, all contracts and leases of the Debtor other than the Assumed Contracts (as defined in the Asset Purchase Agreement) were deemed rejected by the Debtor, in accordance with section 365 of the Bankruptcy Code, effective as of the date the Sale closed, which occurred on April 3, 2025 [see Docket No. 172]. Bar Date for Rejection Damages Claims**

**If the rejection of an Executory Contract pursuant to the Sale Order or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor or the Estate unless a Proof of Claim is Filed with the Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Court. Allowed Rejection Claims shall be classified as Class Five General Unsecured Claims, as described in Article III hereof.**

### ARTICLE VII:
### PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND
### DISTRIBUTION OF ESTATE ASSETS

### 7.1. Right to Object to Claims

The Debtor shall have authority, but not the obligation, after the Effective Date and prior to or on the Claims Objection Deadline, to: (i) File, withdraw, or litigate to judgment, any Objection to the IRS Priority Tax Claim in Class Three; (ii) settle or compromise the IRS Priority Tax Claim in Class Three without any further notice to or action, order, or approval by the Court,

subject to the limitations set forth in this Plan or the Confirmation Order; and (iii) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court or any other party.

### 7.2. Disallowance of Claims.

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor.

**Except as provided herein, pursuant to a Court order or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a final order.**

### 7.3. Distribution Provisions

a) **Distributions to be Made and Adequate Reserves**. The Debtor shall be responsible for making Distributions under the Plan. The Debtor shall establish and maintain a reasonable reserve of Cash to satisfy anticipated expenses until the Plan is fully consummated.

b) **No Liability**. The Debtor shall only be required to act and make Distributions in accordance with the terms of the Plan. Except on account of gross negligence, fraud, illegality, or willful misconduct, the Debtor shall have no: (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan; or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtor as of the Effective Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan.

c) **Distributions on Account of Disputed Claims**. Except as otherwise provided in the Plan, a final order, or as agreed between the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Debtor at such periodic intervals as the Debtor determines to be prudent in its discretion.

d) **No Distributions Pending Disputes**. (a) No Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim; and (b) unless agreed otherwise by the Debtor, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim, or any Person that is or may be the subject of a Cause of Action, until such Person's Disputed Claim and/or the Cause of Action (as applicable) have been resolved by agreement with the Debtor or by a final order. Upon a Disputed Claim becoming an Allowed Claim, such Allowed Claim shall be entitled to Distributions in accordance with its treatment under this Plan, and where such treatment provides for Cash payment on the Effective

Date for such Claim, payment shall be made as soon as practicable after becoming an Allowed Claim.

e) **Unclaimed Distributions**. Any Person and/or Entity that fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such Person and/or Entity shall forfeit all rights to all Distributions to such Person and/or Entity under the Plan, and the Debtor shall be authorized to cancel any Distribution that is not timely claimed; provided that the Debtor shall make reasonable efforts to find an updated address for such Person and/or Entity who has failed to claim the Distribution. Upon forfeiture, the Holder of such Claim or Interest shall be deemed to have irrevocably waived such Claim or Interest and shall be forever barred from recovering on such Claim or Interest against the Debtor and the Estate.

f) **Delivery of Distributions and Undeliverable Distributions to Holders of Claims**. Distributions to Holders of Allowed Claims shall be made to Holders of record as of the date of a Distribution by the Debtor, as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no proof of Claim is Filed); (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no proof of Claim has been Filed and the Debtor has not received a written notice of a change of address prior to the Effective Date.

g) **Undeliverable Distributions**. The Debtor shall make reasonable efforts to attempt to locate Holders of undeliverable or Unclaimed Distributions to determine an alternative address for such Distributions. Any Distributions returned to the Debtor as undeliverable or the like shall remain in the possession of the Debtor, and the Debtor reserves the right not to make further Distributions to such Holder.

h) **De Minimis Distributions**. If any individual Distribution under the Plan to a Holder of an Allowed Claim would be less than $50, the Debtor may, but is not required to, cancel such Distribution.

i) **Remainder Amounts after Final Distribution**. After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and undeliverable Distributions is less than $5,000.00, in lieu of making additional Distributions, the Debtor may donate such amount to another not for-profit, non-religious organization as determined by the Debtor.

## ARTICLE VIII:
## EXCULPATION, RELEASES AND INJUNCTION

### 8.1. Exculpation and Limitation of Liability

(a) **Effective as of the Effective Date, the Exculpated Parties, to the extent of such Exculpated Party's involvement in the Chapter 11 Case, shall neither have nor incur any liability to any Entity or Person for any claims or causes of action arising on or after the Petition Date through and including the Effective Date for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Case; (ii) formulating, negotiating,**

preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; or (iii) the approval of the Disclosure Statement or confirmation or consummation of the Plan; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct; provided, further, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit; provided, further, however, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.

(b) The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

### 8.2. Debtor Releases

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtor and the Estate from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, or the Estate, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date from, in whole or in part, the Debtor, the Chapter 11 Case, the marketing and Sale process, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Case or arising out of the Sale, the Disclosure Statement, the Plan, the DIP Financing Order, or any related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that nothing in this Section 9.2 shall be construed to release the Released Parties from gross

negligence, willful misconduct, or intentional fraud as determined by a final order. The Debtor and the Estate shall be permanently enjoined from prosecuting any of the foregoing Claims, Interests, or Causes of Action released under this Section 9.2 against each of the Released Parties.

The Debtor's releases of the Released Parties, as set forth herein, shall not alter or affect any claim against any Person who may have liability as a subsequent transferee of property of the Debtor, meaning and intending that it shall not be a defense to a fraudulent transfer or preferential transfer claim for a remote transferee of a fraudulent transfer to assert that the Debtor or their Estate released claims against a direct or immediate transferee.

### 8.3. Injunction

Except as otherwise expressly provided in this Plan or the Confirmation Order, on and after the Confirmation Date, all persons and entities who have held, currently hold, or may hold Claims against or Interests in the Debtor, the Estate Assets, or the Estate that arose prior to the Confirmation Date (including, but not limited to, federal, state and other governmental units or agents working on any of their behalf, and any federal or state official, employee, or other entity acting in an individual or official capacity on behalf of any federal, state or other governmental units, except as acting in the exercise of police or regulatory powers) are permanently enjoined from: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against the Debtor or the Estate, or any Estate Assets; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtor or the Estate, or any Estate Assets; (iii) creating, perfecting, or enforcing, directly or indirectly, any Lien or Encumbrance of any kind against the Debtor or the Estate, or any Estate Assets; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligations due to the Debtor or the Estate, or any Assets of the Debtor or the Estate; and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan. Any person or entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or Cause of Action against the Debtor or any Estate Assets based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Claim on which the payments due under this Plan have been made or are not yet due under this Plan. Nothing in this Plan shall prevent the Holder of an Allowed Claim from requesting that the Court waive the foregoing paragraph as to such Holder of an Allowed Claim to the extent

**necessary following a determination by a court of competent jurisdiction that the Debtor has breached is obligations to the Holder of such Allowed Claim under the terms of this Plan.**

## ARTICLE IX:
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 9.1. Conditions Precedent to Confirmation

It shall be a condition to confirmation hereof that the Court shall have entered the Confirmation Order in a form and substance acceptable to the Debtor.

### 9.2. Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following provisions, terms, and conditions shall have been satisfied:

      a) The Court shall have entered the Confirmation Order in a form and substance acceptable to the Debtor, and the Confirmation Order shall be a final order; and

      b) No order of a court of competent jurisdiction shall have been entered and remain in effect restraining the Debtor from consummating the Plan and the transactions contemplated therein.

### 9.3. Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtor or the Estate; (ii) prejudice in any manner the rights of the Debtor, any Holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Creditors or Interest Holders, or any other Entity in any respect. If the Effective Date does not occur, nothing herein shall prevent the Debtor from filing a new proposed plan of liquidation.

### 9.4. Filing of Notice of the Effective Date

On the Effective Date, or as shortly thereafter as reasonably practicable, the Debtor shall File a notice of the Effective Date with the Court. The Debtor shall not be required to serve the notice of Effective Date on any party other than those parties that receive notice via the Court's CM/ECF filing system or that have requested notice under Bankruptcy Rule 2002.

## ARTICLE X:
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

### 10.1. Modification and Amendments

Except as otherwise specifically provided herein, the Debtor reserves the right to modify the Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan. In addition, prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

## 10.2. Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## 10.3. Revocation or Withdrawal of the Plan

The Debtor reserve the right to revoke or withdraw the Plan before the Effective Date, without prejudice to the Debtor having the ability or right to File another plan in the future.

## ARTICLE XI:
## JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain and have exclusive jurisdiction over the Chapter 11 Case to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

      a)      To allow, disallow, determine, liquidate, classify, or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims or Interests;

      b)      To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

      c)      To determine any and all applications or motions pending before the Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption, or assumption and assignment of any Executory Contract;

      d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order;

      e)      To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any entity's obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property

transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

f)    To consider and determine all controversies related to any Causes of Action retained by the Debtor with respect to any Insurance Policies;

g)    To consider and act on the compromise and settlement of any Claim or Cause of Action by or against the Debtor or the Estate;

h)    To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor, or the Estate that may be pending on the Effective Date or that may be brought by the Debtor, or any other related proceedings by the Debtor, and to enter and enforce any default judgment on any of the foregoing;

i)    To decide or resolve any and all applications for Professional Fee Claims;

j)    To issue orders in aid of execution and implementation of the Plan to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

k)    To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of the Plan;

l)    To interpret and enforce any orders entered by the Court in the Chapter 11 Case; and

m)    To enter an order closing the Chapter 11 Case when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

## ARTICLE XII:
## MISCELLANEOUS

### 12.1.   Exemption from Taxes

To the extent the Plan and the Confirmation Order provide for the issuance, transfer, or exchange of notes, debt instruments, and equity securities under or in connection with the Plan then, pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein shall not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 12.2.   Compliance with Tax Requirements

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution.

### 12.3. Defenses and Setoff

Nothing contained in this Plan shall constitute a waiver or release by the Debtor, the Estate of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose either before the Petition Date that the Debtor, the Estate, may have against the Holder of such Claim or Interest.

### 12.4. Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Territory of Guam, without giving effect to the principles of conflicts of law thereof.

### 12.5. Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### 12.6. Debtor's Post-Confirmation Management

On and after the Effective Date, Ajay Pothen shall continue to act solely to the limited extent necessary to: (i) liquidate any Causes of Action; and (ii) complete any other tasks he reasonably determines are necessary to wind down the Debtor and the Estate.

### 12.7. Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. Notwithstanding anything to the contrary herein or in the Plan, the Debtor shall not receive a discharge as set forth in section 1141(d)(3)(a) of the Bankruptcy Code.

### 12.8. Severability of Plan Provisions

If, before the Effective Date, any term or provision of the Plan is held by the Court or any other court exercising jurisdiction to be invalid, void, or unenforceable, the Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall

then be applicable as altered or interpreted so long as such term or provision is acceptable to the Debtor. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. **The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtor' consent; and (iii) non-severable and mutually dependent.**

### 12.9. Exhibits

All exhibits and documents to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. The Debtor reserve the right to amend the exhibits to the Plan any time prior to confirmation, subject to reasonable notice.

### 12.10. No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor, the Estate with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

### 12.11. Conflicts Among Plan Documents

To the extent of a conflict between the Plan and/or the Disclosure Statement and the Confirmation Order, the Confirmation Order shall govern.

### 12.12. Recommendation

In the opinion of the Debtor, the Plan is superior and preferable to the alternatives described in the Disclosure Statement. Accordingly, the Debtor recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support confirmation.

Dated: October 15, 2025                    Respectfully submitted,

                                           **MARIANAS PROPERTIES, LLC**

                                           */s/ Ajay Pothen*
                                           Ajay Pothen
                                           President of the Debtor


Through its counsel:                       /s/ *Andrew C. Helman*

                                           **MINAKSHI V. HEMLANI**
                                           **LAW OFFICES OF MINAKSHI V.**
                                           **HEMLANI, P.C.**
                                           285 FARENHOLT AVE., SUITE C-312
                                           TAMUNING, GUAM 96913
                                           TELEPHONE: (671) 588-2030
                                           EMAIL: mvhemlani@mvhlaw.net

                                           **ANDREW C. HELMAN** (admitted *pro hac vice*)
                                           **DENTONS BINGHAM GREENEBAUM LLP**
                                           One City Center, Suite 11100
                                           Portland, Maine 04101
                                           Phone: (207) 619-0919
                                           Email: andrew.helman@dentons.com